**UNITED STATES of America**

v.

**Billie A. BRYANT, Appellant.**

**Nos. 23746, 23783.**

**UNITED STATES of America**

v.

**Benjamin MURDOCK, Appellant.**

United States Court of Appeals,
District of Columbia Circuit.

Argued April 26, 1971.

Decided April 21, 1972.

Rehearing and Rehearing En Banc
Denied Aug. 16, 1972.

Certiorari Denied Jan. 8, 1973.
See 93 S.Ct. 923.

Messrs. Lee Loevinger and Raymond E. Vickery, Jr., Washington, D. C. (both appointed by this court) for appellant.

Mr. Philip L. Cohan, Asst. U. S. Atty., with whom Messrs. Thomas A. Flannery, U. S. Atty. at the time the brief was filed, Harold H. Titus, Jr., present U. S. Atty., John A. Terry, Asst. U. S. Atty., and Richard A. Hibey, Asst. U. S. Atty. at the time the brief was filed, were on the brief, for appellee.

Before BAZELON, Chief Judge, and WRIGHT and LEVENTHAL, Circuit Judges.

PER CURIAM:

In an indictment of four counts, appellant was charged with two counts of first degree murder of an agent of the Federal Bureau of Investigation, in violation of 18 U.S.C. §§ 1111(a) and 1114 (1970) (Counts 1 and 3), and two counts of first degree murder in violation of 22 D.C.Code § 2401 (1967) (Counts 2 and 4). The Government elected to proceed only on the District of

Columbia Code offenses, and appellant was found guilty as charged on both counts. The jury being unable to agree on punishment, the trial judge imposed a consecutive sentence of life imprisonment on each count.

The Government's evidence showed that at the time of the twin murders appellant was an escapee from Lorton Reformatory, where he had been serving a sentence of 18 to 54 years for bank robbery. The Government's evidence also showed that less than an hour before the crimes in suit here appellant had robbed a bank in Oxon Hill, Maryland. As a result of the bank robbery, three FBI agents went to the home of appellant's wife in order to determine his whereabouts. Appellant came to the door and advised the agents that Mrs. Bryant was not at home. In answer to another question, he also denied that he was Mr. Bryant, stating that his name was "Freeman." When one of the agents asked permission to enter the apartment to talk to him, appellant pulled his gun and began firing, killing two of the three agents. Appellant was later arrested in the evening of the same day concealed in an attic, at which time he had in his possession a fully loaded .38 caliber police special revolver. Ballistic tests showed that bullets recovered from the bodies of the agents had been fired from this gun.

On appeal Bryant argues that his conviction must be reversed because (1) the District Court tried the case in a district saturated with publicity prejudicial to appellant after the court had granted a motion for change of venue; (2) the District Court denied appellant the right to interrogate prospective jurors individually on *voir dire*; (3) appellant was tried on an indictment after the District Court had dismissed all counts in the indictment; (4) the court drew a jury from a group of jurors which had been misled or contaminated by the prejudicial remark of another judge; (5) the court permitted the evidence of prior crimes to be given to the jury; (6) the court refused to give the jury a pro-

posed instruction regarding appellant's mental condition as precluding premeditation; and (7) the court instructed the jury that premeditation might be instantaneous.

We affirm.

I

■ Appellant's argument based on alleged prejudicial publicity arises out of the fact that the court initially granted his unopposed motion for change of venue and then allowed appellant to withdraw his motion, again with the Government consenting. Appellant's reason for withdrawing his motion was that one of his counsel, employed by the Legal Aid Agency here, could not participate in his trial outside the District of Columbia. Appellant's counsel also suggested his disapproval of the transfer to Richmond, appellant as well as his principal counsel being black. Appellant argues that it was reversible error for the trial court "to make the transfer of the case contingent on defendant's relinquishment of his right to effective counsel under the Sixth Amendment to the Constitution," and "for the District Court to make transfer of the case contingent on acceptance of Richmond, Virginia, as the venue for the trial."

Appellant's Sixth Amendment argument is difficult to understand. As indicated, one of appellant's counsel, Mr. Christensen, was from the Legal Aid Agency and under the law could not follow the case outside the District. 2 D.C. Code §§ 2201–2210 (1967). Consequently, it would have been necessary to appoint counsel to replace him in the transferee district. But this point was never raised because appellant insisted on the services of Mr. Christensen. According to appellant's chief trial counsel Mr. Christensen was "invaluable to the defense." (June 27 Transcript 54.) The record confirms, to some extent at least, this evaluation because Mr. Christensen had been in the case longer than appellant's chief counsel and had taken the lead in preparing and presenting ap-

pellant's insanity defense, which under the facts of this case was the only realistic defense he had. Faced with the prospect of losing the services of Mr. Christensen, appellant chose to have his case tried in the District of Columbia where his chief counsel, in support of his motion to withdraw the motion for change of venue, assured the trial court that appellant could get a fair trial.

The putative transfer to Richmond is a little more difficult to explain. Both appellant and his chief counsel were black. Appellant was a Black Muslim, charged with murdering two FBI agents. Given the racial history surrounding the Richmond area, it does seem that the trial court should have explored other places.[1] But our reading of the record assures us that the crucial consideration leading appellant's chief counsel to withdraw appellant's motion was that he really did not want the trial outside the District without Mr. Christensen. (June 27 Tr. 54.)

We note that while appellant did not obtain the acquittal for which he hoped, his trial was solely concerned with the issue of insanity. The Legal Aid Agency of the District of Columbia has made a special study of and garnered special experience concerning this defense. Judges in this jurisdiction have been especially concerned with the rights of an accused presenting an insanity defense. For example, the District Judge who had been assigned to this case, and from whose judgment the appeal has been taken, was one known for his readiness to provide the bifurcated trials contemplated by our opinion in Holmes v. United States, 124 U.S.App.D.C. 152, 363 F.2d 281 (1966), and he did in fact give defense counsel the option to have a bifurcated trial, an option which defense counsel first accepted and ultimately declined.

We see no substantial basis for upsetting the conviction because of the rulings on transfer of venue.

## II

Appellant asserts that his conviction must be reversed "because the District Court denied him the right to interrogate prospective jurors individually on voir dire." Although this argument might be construed as an insistence on appellant's part that his counsel should have been permitted to interrogate prospective jurors individually, in brief and in oral argument appellant's complaint is aimed at the manner and method by which the trial judge conducted the *voir dire*, as he had a right to do under Rule 24(a), Fed.R.Crim.P. Appellant is particularly disturbed by the *en masse* examination conducted by the court rather than individual interrogation of each prospective juror. Appellant also contends that the trial court announced its decision respecting the conduct of the *voir dire* before his counsel had opportunity to state his position.

Some time prior to trial, the court advised counsel for both sides that it would conduct the *voir dire* examination of the jury, and instructed counsel to submit to the court one week in advance of trial any questions they wished to be addressed to prospective jurors. In a further memorandum distributed three days before the trial began, the court advised counsel as follows:

"Individual voir dire of each juror is impractical, unnecessary and not in the interests of justice. The jury, when chosen, will be sequestered. Selection of a jury may well involve a prospective panel of 150 or more. Individual questioning of each member of the panel will require several days. Publicity will issue and there is no feasible way of sequestering the panel while the selection process takes place.

1. Thus, Philadelphia is almost equidistant with Richmond from Washington. The trial judge had not inquired as to the condition of the court calendar in Richmond.

In the event particular responses of individual jurors suggest to the Court further individual interrogation of the juror, this can be done at the bench in accordance with the long established practice in this jurisdiction. The state court practice of individual interrogation has recently been illustrated in the *Ray* and *Sirhan* cases, and not only proved time-consuming but tended to personalize jurors under the glare of publicity.in a fashion that is inconsistent with the dignity of federal court practice. Trial by voir dire is offensive and certainly unsuited to this case. The ABA-recommended standards do not have the thrust defendant's cited excerpts suggests. The Court will develop techniques designed to deal fairly with the problems as they arise, tailoring procedures to the exigencies of this trial. This is the procedure encouraged by the Court of Appeals and entirely fitting in this instance. United States v. Ridley [134 U.S.App.D.C. 79, 412 F.2d 1126 (1969)]. *Cf.*, Silverthorne v. United States, 400 F.2d 627, 635–640 (9th Cir. 1968); Rizzo v. United States, 304 F.2d 810 (8th Cir. 1962)."

At a pretrial conference which followed the distribution of the above memorandum, the court stated that it was quite willing to hear counsel's argument for alteration of the proposed *voir dire* procedure and to make any changes therein deemed advisable. Defense counsel stated at this time that he was not requesting the court to interrogate each juror individually with respect to every question, but rather that an individual examination be conducted in certain areas. The judge indicated that he would proceed according to his memorandum, but that counsel could follow the proceedings and make any further suggestions as they went along.

The *voir dire* followed the procedure outlined in the memorandum. Trial counsel raised only one objection to the procedure as it went along, and appellate counsel has not seen fit to urge that objection on this appeal. After the jury was impanelled, trial counsel for appellant stated:

"Your Honor, may I just say on the record that I want to express my appreciation to the Court for an expedited manner in which this voir dire was handled, and I believe that the Court covered, in essence, much of what we requested, outside of the scope of those things we had objection to. I appreciate the manner in which it was conducted."

(Trial Tr. 220.)

■■ It is, of course, clear that the method and manner of conducting a *voir dire* are left to the discretion of the trial judge and that ordinarily, unless specific objection is made at the time, *voir dire* issues raised on appeal will not be noticed. Aldridge v. United States, 283 U.S. 308, 51 S.Ct. 470, 75 L.Ed. 1054 (1931). The court here was concerned that extensive *voir dire* examination would extend over a period of several days and that the publicity resulting therefrom might be prejudicial to a fair trial. Although the jury when chosen was to be sequestered, sequestering the whole venire during the jury selection process presented substantial problems. Consequently, the trial court was understandably concerned to complete the impanelling of the jury in one day, if feasible. It did so by asking the usual, unexceptional, general questions of the jurors *en masse* and then calling the prospective jurors who had made an affirmative response to the questions to the bench for further interrogation outside the hearing of the other veniremen. Thus while all the talesmen in the courtroom knew which of their number had responded affirmatively to one or more of the court's general questions, they did not hear the detailed interrogation of those prospective jurors.

This court is of the view that *voir dire* examinations should be conducted in accordance with the recommendations of the American Bar Association Project on Minimum Standards for Criminal Justice, Standards Relating to Fair

Trial and Free Press § 3.4(a) (1968). However, despite appellant's contrary suggestion, the District Court's procedure here was generally in accord with those recommendations, and under the circumstances presented by this case we see no prejudicial error.

Appellant cites various authorities[2] for his position that individual interrogation of veniremen is required. But nothing in those cases suggests that individual interrogation is required before it becomes known that a talesman has had some previous exposure to the case.[3] All of appellant's authorities insist that once the fact of exposure is disclosed, the details must be developed out of the hearing of the other veniremen. That procedure was followed in this case. In most of appellant's cases the content of the *voir dire* was challenged. Here appellant's counsel was invited to suggest additional questions, and he had none. Moreover, and most important, no prejudice from the procedure used is shown. Baker v. United States, 131 U.S.App.D. C. 7, 401 F.2d 958 (1968).

### III

■■ Appellant's attack on the indictment on *Gaither*[4] grounds *is without merit.* The indictment here was returned March 5, 1969, and the *Gaither* holding was prospective only from April 8, 1969. 134 U.S.App.D.C. at 175, 413 F.2d at 1082. Appellant also suggests that he was tried on an indictment after all the counts had been dismissed by the District Court. As indicated earlier, the indictment here originally consisted of two counts of murder under the District of Columbia Code and two under Title 18, United States Code. When the District Court determined that the case was to be tried outside the District, it stated: "The D.C. Code counts (2 and 4) are not transferable and must be dismissed." Appellant was tried, of course, in the District of Columbia on the D.C. Code counts, the Title 18 counts being dismissed on the Government's election.

Although the record is unclear as to the actual intention of the District Court concerning the dismissal of Counts 2 and 4, the fact is that under Rule 48(b), Fed.R.Crim.P., the District Court was without authority to dismiss the counts *sua sponte.* Moreover, the court's statement can be interpreted as indicating its opinion that dismissal papers should be prepared by the United States Attorney. None were, nor did the Government move orally for dismissal of the counts.

■ After the federal counts were dismissed, with defense counsel's approval and to protect the defendant from prejudice, the court had typed an "indictment" including only the D.C. Code counts for use before the jury. Appellant now suggests this was an invalid amendment of the original indictment. The original indictment, however, was never amended. It remains as the only indictment in this case. The typed "indictment" for jury use in no way replaced or amended it. The use of such an "indictment" in the circumstances of this case was in the interest of justice and in appellant's own interest.

### IV

■ Appellant's remaining issues may be quickly disposed of. As indicated, to prove intent evidence of appellant's fugitive status and the fact that within the hour before the murders he had robbed a bank was admitted. Coun-

---

2. Silverthorne v. United States, 9 Cir., 400 F.2d 627 (1968); Patriarca v. United States, 1 Cir., 402 F.2d 314 (1968); United States v. Marcello, E.D.La., 280 F.Supp. 510 (1968).

3. It should be noted that the general questions addressed to the venire and challenged here required yes or no answers concerning the prospective jurors' prior exposure to this case. We express no opinion as to possible prejudice from general questions in other areas addressed to the venire requiring yes or no answers in the presence of the other prospective jurors.

4. Gaither v. United States, 134 U.S.App. D.C. 154, 413 F.2d 1061 (1969).

sel concedes this evidence was probative, but suggests that its probative value is outweighed by its potential prejudice. Obviously the evidence was both highly probative and highly prejudicial. On this record we are unable to say that the balance the trial court struck was wrong. *See* C. McCormick, Evidence § 157 at 332 (1954).

 On the issue of diminished responsibility, this court *en banc* has rejected that doctrine. Stewart v. United States, 107 U.S.App.D.C. 159, 275 F.2d 617 (1960), reversed on other grounds, 366 U.S. 1, 81 S.Ct. 941, 6 L.Ed.2d 84 (1961). The Supreme Court has affirmed another judgment of this court rejecting the doctrine, indicating the matter was one to be determined by the local court. Fisher v. United States, 328 U.S. 463, 476–477, 66 S.Ct. 1318, 90 L. Ed. 1382 (1940). Under the circumstances any proposed change in this court's position on this doctrine should be addressed to the court *en banc*. *See also* Stewart v. United States, 129 U.S. App.D.C. 303, 305, 394 F.2d 778, 780 (1968).[5]

Finally, appellant challenges the trial court's instructions on the issues of premeditation and deliberation. Again we believe independent consideration by this panel of the instruction given by the trial judge in this case is effectively precluded by this court's opinion in Austin v. United States, 127 U.S.App.D.C. 180, 186 and n.12, 382 F.2d 129, 135 and n.12 (1967), and by Fisher v. United States, *supra*. Both those cases approve the premeditation and deliberation instruction given by the trial court in *Fisher*, which instruction is virtually verbatim the instruction in this case.

In sum, we believe the record shows that appellant had a fair trial. He was ably represented at both the trial and appellate levels. The evidence of guilt is overwhelming. Appellant's only real defense on trial was insanity, and the record is such that that issue is not even raised on appeal. Under the circumstances the judgment appealed from must be and is

Affirmed.

BAZELON, Chief Judge, concurring in the result only of Part I, concurring in the Court's opinion in Parts II–III, and dissenting from Part IV:

For the reasons stated in my separate opinion in United States v. Alexander & Murdock, 152 U.S.App.D.C. ——, 471 F. 2d 923 No. 23,190 (April 21, 1972), I dissent from Part IV of the Court's opinion. I would hold that the question of "diminished responsibility" is now open to decision, and that the question should be resolved in favor of appellant's position. *See* slip opinion in *Alexander & Murdock* at 948–952.

After presenting evidence that he "was suffering from a sociopathic or antisocial personality with paranoid features at the time of the incident * * * and that Defendant had little control over himself and that his impulses completely took over at the time of the killings," Brief for Appellant at 39, appellant requested the following jury instruction:

If the members of the jury are not satisfied from the evidence that the defendant, at the time he committed the acts, was so mentally unsound as to render him not guilty by reason of insanity; yet if the jury find[s] from the evidence that there was such a degree of mental unsoundness existing at the time of the homicide as to render the defendant incapable of premeditation and of forming such an intent as the jury believe[s] the circumstances of this case would reasonably impute to a man of sound mind, they

5. Chief Judge Bazelon's dissent to our ruling on diminished responsibility is based on the dissenting part of his opinion in United States v. Alexander and Murdock, 152 U.S.App.D.C. ——, 471 F.2d 923, 948– 952 (23,190, decided today). The court in *Murdock* also held that any reconsideration of the *en banc* opinion in *Stewart* should be addressed to the court *en banc*.

may consider such degree of mental unsoundness in determining the question whether the act was first degree murder or second degree murder.

The trial judge declined to offer this instruction and this Court affirms on the strength of our en banc decision in Stewart v. United States, 107 U.S.App. D.C. 159, 275 F.2d 617 (1960), rev'd on other grounds, 366 U.S. 1, 81 S.Ct. 941, 6 L.Ed.2d 84 (1961). There, as I pointed out in *Alexander & Murdock*, at 951, the defendant requested an instruction that evidence of "diminished intellect" could reduce the offense from murder in the first degree to second-degree murder. Judge Burger's opinion for the Court, affirming the trial court's denial of the proposed instruction, makes clear that "[i]n the view of the majority the evidence in question was adapted not so much to rebut the specific charge of premeditation, but rather to mitigate in general the gravity of the offense." Slip opinion in *Alexander & Murdock* at 951. Where a defendant, as in *Bryant* or *Alexander & Murdock* seeks to introduce relevant psychiatric evidence to negate the state of mind for a particular crime, *Stewart* does not bar the introduction of that evidence or the granting of an appropriate instruction.

Since Bryant was convicted at a unitary trial, the jury at least had an opportunity to hear the psychiatric evidence before deciding whether the acts were committed with premeditation and deliberation. Only the proposed jury instruction is now at issue. In *Alexander & Murdock*, on the other hand, the issue of responsibility and the psychiatric testimony pertaining to it were not introduced until the jury had already decided that the defendant committed the acts in question with the requisite intent. As a result, unless the trial judge granted an instruction at the end of the responsibility hearing to the effect that the jury could reconsider the issue of intent in light of the relevant testimony, the jury would not be able to consider any psychiatric evidence on the issue of intent.

Plainly, the failure to give the proposed instruction in *Alexander & Murdock* was more prejudicial to the defense than the counterpart refusal in *Bryant*. Nevertheless, while the pertinent evidence was at least before the jury in *Bryant*, the defendant was still entitled, in my view, to an instruction explicitly setting forth the relevance of that testimony to the issue of intent. I would reverse the conviction because of the failure to offer such an instruction.

## ON APPELLANTS' PETITIONS FOR REHEARING AND SUGGESTIONS FOR REHEARING EN BANC

Before BAZELON, Chief Judge, and WRIGHT and LEVENTHAL, Circuit Judges.

### ORDER

PER CURIAM.

On consideration of appellant's petition for rehearing in No. 23,746, United States v. Bryant, it is

Ordered by the Court that appellant's aforesaid petition is denied.

BAZELON, Chief Judge, would grant the petition for rehearing for the reasons indicated in the accompanying statement.

Before BAZELON, Chief Judge, McGOWAN, Circuit Judge, and RUSSELL E. SMITH,[*] Chief District Judge for the District of Montana.

### ORDER

PER CURIAM.

On consideration of appellant's petition for rehearing in No. 23,783, United States v. Murdock, it is

Ordered by the Court that appellant's aforesaid petition is denied.

[*] Sitting by designation pursuant to 28 U.S.C. § 292(c) (1970).

BAZELON, Chief Judge, would grant the petition for rehearing for the reasons indicated in the accompanying statement.

Before BAZELON, Chief Judge, and WRIGHT, McGOWAN, TAMM, LEVENTHAL, ROBINSON, MacKINNON, ROBB, and WILKEY, Circuit Judges.

## ORDER

PER CURIAM.

On consideration of appellants' suggestions for rehearing *en banc,* it is

Ordered by the Court *en banc* that the aforesaid suggestions are denied.

Statement of BAZELON, Chief Judge, as to why he would grant appellants' suggestions for rehearing *en banc.*

BAZELON, Chief Judge:

These two cases raise fundamental questions concerning our procedure for deciding which litigants should obtain the benefit of the overruling of prior case law. In each of these cases the trial judge denied a proposed instruction to the jury that they could consider psychiatric testimony offered in relation to the insanity defense as relevant to the question of specific intent. Two separate panels of this Court affirmed the convictions on the grounds that the doctrine of "diminished responsibility," invoked by appellants, was precluded by prior decisions of this Court.[1] Subsequently, this Court overruled *en banc* those prior decisions, and appellants now assert that their convictions should be reversed and their cases remanded for new trial under the new standard. For the reasons set forth below, I would grant the suggestion for rehearing *en banc* in both cases.

In No. 23,746, appellant Bryant was convicted of first-degree murder. At the conclusion of his trial, which included a defense of insanity, he requested an instruction that

if the jury find[s] from the evidence that there was such a degree of mental unsoundness existing at the time of the homicide as to render the defendant incapable of premeditation and forming such an intent as the jury believe[s] the circumstances of this case would reasonably impute to a man of sound mind, they may consider such degree of mental unsoundness in determining the question whether the act was first degree murder or second degree murder.

In No. 23,783, appellant Murdock, who also offered a responsibility defense, was convicted of murder in the second degree. He proposed to tell the jury that

mental unsoundness, though insufficient to entitle the accused to an acquittal under the legal test of responsibility, may nevertheless be sufficient to prevent the accused from forming malice aforethought, and thus diminish the defendant's responsibility or reduce the grade of the offense. * * * If you find that the accused's mental condition resulted in a failure to formulate malice aforethought, you must find the accused guilty of only manslaughter.

Appellants Bryant and Murdock both argued on appeal that reversal was required because of the trial court's failure to offer the requested instruction. But in each case a majority of the panel affirmed the conviction on the grounds that "any proposed change in the court's position on this doctrine should be addressed to the court *en banc,*" slip opinion in *Bryant* at —— of 153 U.S.App.D. C., at 1046 of 471 F.2d, and that "[i]f the law is to be changed so as to make evidence tendered in support of an insanity defense also relevant to the intent elements in the alleged crime itself inde-

1. Fisher v. United States, 80 U.S.App. D.C. 96, 149 F.2d 28 (1945), aff'd, 328 U.S. 463, 66 S.Ct. 1318, 90 L.Ed. 1382 (1946) ; Stewart v. United States, 107 U.S.App.D.C. 159, 166, 275 F.2d 617, 624 (1960) (*en banc*), rev'd on other grounds, 366 U.S. 1, 81 S.Ct. 941, 6 L. Ed.2d 84 (1961).

pendently of insanity, that must be done by the court sitting *en banc*," in *Murdock* at —— of 152 U.S.App.D.C., at 967 of 471 F.2d. In both cases I argued in dissent that appellants' position was not foreclosed by our prior decisions and that the question was now open for decision by a panel. Since my view was rejected in both cases, I called for rehearing *en banc*.

While the petitions for rehearing were pending, this Court announced its decision in United States v. Brawner, 153 U.S.App.D.C. ——, 471 F.2d 969 (1972) (*en banc*), wherein we abandoned the *Durham* formulation of criminal responsibility and adopted a test derived from the American Law Institute's formulation. As a "corollary" to that decision, the Court—unanimously on this point—deemed it appropriate to overturn the prior decisions of this Court which had been thought to preclude the defense of diminished responsibility. The question now before us is whether Bryant or Murdock will obtain any benefit from that ruling.

Brawner, who fired five shots through the closed door of an apartment, was brought to trial on a charge of first-degree murder for killing one of the occupants of the apartment. Before the case was submitted to the jury, the trial judge acquitted Brawner of murder in the first degree, and the jury returned a verdict of guilty of second-degree murder. Yet the Court's discussion of the diminished responsibility doctrine in *Brawner* explicitly stops short of deciding its applicability to a defendant charged with second-degree murder. "Whether [the doctrine] may be applicable in a case where malice [an element of second-degree murder] is established on a subjective standard, so as to reduce the offense to manslaughter, is," according to the Court, "a matter that requires further analysis and reflection." In *Brawner* at —— of 153 U.S.App.D.C., at 1002 of 471 F.2d n. 75. In other words, the Court refused to decide the only aspect of the question which could conceivably be relevant to the case then before us.

The Court's decision in *Brawner* that psychiatric evidence can be introduced to reduce first-degree murder to second is gratuitous in another sense. Brawner did not offer the trial court a proposed instruction on diminished responsibility. Nor did he request such an instruction. The question did not arise on appeal until raised by one of the many amicus curiae briefs submitted in that case. Yet the Court chose *Brawner* as the vehicle for *en banc* reconsideration of the issue, and announced a new rule which—as limited by the Court—was entirely without significance for the case then before us.

Whether or not the resolution of this question in *Brawner* was an appropriate exercise of our judicial function is not now the issue. On balance, I am persuaded that the announcement of the new rule in *Brawner,* as an adjunct to the adoption of a new standard of criminal responsibility, was justified. But it is clear to me in any case that our choice of *Brawner* as a vehicle cannot be used to justify denying the benefit of the ruling to appellants Bryant and Murdock. The contrast between *Brawner* and these two cases is very striking. Both Bryant and Murdock raised the question in timely fashion before the trial court. Both offered a proposed instruction. Both argued the question persistently and effectively on appeal. It seems to me intolerable for us to bypass Bryant and Murdock, who have been litigating the question continuously since their trials in the fall of 1969, and to announce the new rule in a case where the question was never properly raised. This Court has so often penalized defendants for various missteps in the presentation of novel questions, see, e. g., Watson v. United States, 141 U.S.App. D.C. 335, 439 F.2d 442 (1970) (*en banc*), that it is utterly beyond explanation for us now to turn our backs on Bryant and Murdock while choosing another case for the unveiling of our new rule.

Moreover, there is another sense in which *Bryant,* and not *Brawner,* is the case where the question is properly raised. Of the three cases, *Bryant* is the only one which involves a conviction of first-degree murder. Thus, *Bryant* is the only case which precisely fits the Court's decision in *Brawner,* and the only case where application of the new rule would unquestionably mandate a different result.

The Court obviously intended the announcement of the new rule in *Brawner* to have only prospective force. But to appreciate properly the true impact of the Court's picking and choosing among these three cases, it is important to consider another aspect of the *Brawner* decision which sheds light on the Court's understanding of the prospectivity doctrine. The adoption of a new formulation of the responsibility test was also made prospective. But the Court points out, 153 U.S.App.D.C. at ——, 471 F.2d at 1005, that "under established doctrines of the judicial function . . . the benefit of the rule cannot wholly be withheld from the defendant in whose case it was established." By application of those same "established doctrines" to the issue of diminished responsibility, it seems clear that Brawner would have derived some benefit from the adoption of the new rule except for the fact that the Court decided only as much of the question as had no possible relevance to Brawner's case. Yet if the Court had announced that same limited conclusion in *Bryant* I presume that reversal of Bryant's conviction would be required. Thus, the net effect of using *Brawner* as our vehicle is to undermine precisely those "established doctrines"—and the interests they serve—which the Court now finds it inconvenient to apply.

Perhaps the explanation for our choosing *Brawner* and ignoring *Bryant* is that the Court does not consider the new doctrine sufficiently important to warrant reversal of a conviction. I do not share that view. Most defendants, it seems to me, have mixed feelings about an acquittal by reason of insanity. Conditions at St. Elizabeths are not necessarily preferable to those at a penitentiary; and the stigma a judicial determination of mental illness may, sadly, be more oppressive than the stigma a judicial determination of guilt. On the other hand, I have no doubt that every defendant who cannot obtain an outright acquittal has a very lively interest in insuring that he is convicted on the lowest possible count. And the Court now concedes that psychiatric evidence may have a fundamental impact on the jury's determination of the degree of the offense. But even if the Court is convinced that no conviction should be overturned on the strength of this doctrine, I could respect that view if it were brought into the open and clearly articulated. I am deeply troubled by the Court's effort to bury *Bryant* so that the question does not even seem to arise.

In my view, the new doctrine should be applied to all cases now at trial or on appeal, as well as all cases that will be brought to trial subsequent to our decision in *Brawner.* There is ample precedent for that approach. *See, e. g.,* Linkletter v. Walker, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965); Tehan v. United States ex rel. Shott, 382 U.S. 406, 86 S.Ct. 459, 15 L.Ed.2d 453 (1966). And the burden of granting this relief would surely be extremely small. Compare opinion in *Brawner* at —— of 153 U.S.App.D.C., at 1005 of 471 F.2d n. 70. Of course, there may be some irrationality in permitting the availability of relief to turn on the position which a case has reached in progressing through the criminal process. *See* Schaefer, The Control of "Sunbursts": Techniques of Prospective Overruling, 42 N.Y.U.L.Rev. 631, 644–46 (1967). But that irrationality seems to me far less troublesome than the irrationality of withholding relief from litigants who have vigorously and properly pursued it.

I take it there is no dispute that it is the function of courts to decide concrete questions in the context of an appropriate case, and not to expound generally on abstract principles of law. The wis-

dom of that ancient principle is strikingly illustrated by the Court's refusal to heed it here. In *Brawner* we adopted a new and admirable rule on diminished responsibility, but we have pretended not to notice that the new rule is critical to the fair resolution of cases that are now before us. What explanation can we offer to appellants Bryant and Murdock for refusing to consider a question that they have properly raised? Can we reasonably expect them to respect the fairness and integrity of our judgment when we bypass their cases and resolve the question in a case where it can have no impact on the result? I would grant the petitions for rehearing *en banc* in both cases. The conviction in *Bryant* should be reversed and the case remanded for a new trial by means of a one sentence order and a citation to our opinion in *Brawner*. In *Murdock* we should consider the question left open in *Brawner* —the application of the new rule to reduce second-degree murder to manslaughter. Our refusal to take this action imperils the fairness and integrity of our decisionmaking process.