Edward F. HARRIS, Appellant,

v.

UNITED STATES, Appellee.

Gaither SPENCER, a/k/a Walter
Spencer, Appellant,

v.

UNITED STATES, Appellee.

Nos. 10137, 10219.

District of Columbia Court of Appeals.

Argued Jan. 5, 1977.

Decided May 5, 1977.

John A. Shorter, Jr., Washington, D. C.,
appointed by this court, with whom Berna-
dette Gartrell, Washington, D. C., also ap-
pointed by this court, was on the brief, for
appellant in No. 10137.

Charles A. Kubinski, Washington, D. C., appointed by this court, for appellant in No. 10219.

Daniel A. DeRose, Asst. U. S. Atty., Washington, D. C., with whom Earl J. Silbert, U. S. Atty., John A. Terry and Lawrence H. Wechsler, Asst. U. S. Attys., Washington, D. C., were on the brief, for appellee.

Before KELLY, FICKLING * and GALLAGHER, Associate Judges.

GALLAGHER, Associate Judge:

After a jury trial appellants were both found guilty of felony murder (D.C.Code 1973, § 22–2401), second-degree murder (D.C.Code 1973, § 22–2403), attempted first-degree burglary while armed (D.C.Code 1973, §§ 22–1801(a), –3202), and conspiracy to commit an assault with a dangerous weapon (D.C.Code 1973, § 22–105a). The convictions arose out of the shooting death of Lewis Sissler.

The night before the shooting Mr. Spencer's mother had purportedly been raped in the vicinity of the house in which Mr. Sissler was residing. Believing that the alleged rapist might be in the house,[1] by prior arrangement the defendants and several of their friends and relatives went to the residence. They were looking for the rapist in order to "get" him and beat him up. When Mr. Sissler answered the door the defendants asked him some questions about the alleged rapist. Mr. Sissler said that he did not know what they were talking about and, after being asked the same questions several times, tried to shut the door. Sev-

eral shots were fired and Mr. Sissler was hit. Shortly thereafter the police arrived and Mr. Sissler was taken to the hospital where he died several hours later.

Appellants' principal allegation of error is that there was insufficient evidence to support the conviction for attempted burglary in the first degree which was the basis of the felony murder count.[2] Appellants argue that there was insufficient evidence to conclude that the defendants made an attempt to enter the house or that they did so with the specific intent to commit an assault therein. After a review of the record, however, we find appellants' contentions to be meritless.

■ A detective who had talked with Mr. Sissler at the hospital testified Mr. Sissler had told him that "As the man pulled the gun out and *started in the house*," he (Mr. Sissler) had attempted to close the door.[3] [Emphasis added.] This constitutes direct testimony that the defendants attempted to enter the house by force. Additionally, there was circumstantial evidence from which the jury might infer that the defendants attempted to enter the house. A codefendant discharged a shotgun into the wooden door of the house right next to the lock. Thus, the inference could reasonably be drawn that appellants sought to enter the house.

The contention that there is no evidence from which the jury could conclude that the defendants (if they did attempt to break and enter) had the intent to commit an assault therein is contrary to the record. The evidence established that appellants and their colleagues were out to "get" the

---

* Associate Judge Fickling was a member of this division at the time the case was argued but did not participate in the decision as he died before the opinion was published.

1. Earlier that day Mr. Spencer's mother had indicated that the garage of the house might have been the place in which she was raped. Additionally, that same day Mr. Spencer's grandmother (the rape victim's mother) had been to the house and accused the gardener who was working outside of raping her daughter. The bewildered gardener had gone to the house to have the owner, Mr. Sissler's father-

in-law, explain to Mr. Spencer's grandmother that he could not have been the rapist.

2. The felony murder statute, D.C.Code 1973, § 22–2401, provides in pertinent part:

Whoever . . . without purpose so to do kills another . . . in perpetrating *or attempting to perpetrate any housebreaking* while armed with or using a dangerous weapon is guilty of murder in the first degree. [Emphasis added.]

3. Appellants argue that this testimony was improperly admitted hearsay. We dispose of this *infra*.

alleged rapist. Several witnesses testified that the group wanted to find and beat up the alleged rapist. From this the jury could readily infer that appellants had the specific intent to commit an assault in the house.

■ Appellant Harris next contends that the trial court's instruction to the jury on attempted first-degree burglary was insufficient and that it ought to have included the following requested portion:

> I instruct you that even if the person who fired the pistol and the person who fired the shotgun did so with the purpose in mind of wounding or injuring Mr. Sissler . . . if you so find, or have a reasonable doubt thereto, the first element of [the offense, breaking or entering without breaking] . . . would not have been proved by the evidence about the shooting into the door.

The trial court was quite correct, however, in refusing to give the above quoted instruction as it is not only confusing but an inaccurate statement of the law. The proposed instruction fails to recognize that the defendants might have had several motives for firing the weapons, and if one of those motives was to gain entry into the house that would be sufficient to prove attempted first-degree burglary while armed.[4]

■ Both Harris and Spencer also argue that the instructions were incomplete because the trial court refused to give a requested instruction on voluntary manslaughter. The defendant is entitled to a manslaughter instruction if there is "some evidence" to show adequate provocation or lack of malice aforethought. *Stevenson v. United States*, 162 U.S. 313, 315, 16 S.Ct. 839, 40 L.Ed. 980 (1896); *Pendergrast v. United States*, D.C.App., 332 A.2d 919 (1975). The trial court found that there was no evidence tending to show provocation legally sufficient to require the manslaughter charge. We agree.

■ Appellant Spencer argues that when Mr. Sissler said that he did not know what they were talking about and tried to shut the door, the rage of the defendants was sufficient evidence for the jury to find adequate provocation or lack of malice. Additionally, appellants contend that because "there was no direct evidence to show that the group directly planned to go to the 16th Street address"[5] there was no testimony to "compel the jury to find malice." Rage at having a door closed to prevent entry into the house of another is not the sort of conduct courts have recognized as adequate provocation to allow a finding of manslaughter instead of either degree of murder. It is elementary that adequate provocation is only that type of provocation which "causes a reasonable man to lose his normal self-control." W. LaFave & A. Scott, Handbook on Criminal Law § 76, at 573 (1972).[6] *See Hurt v. United States*, D.C.App., 337 A.2d 215, 218 (1975); *Austin*

---

4. We note that the instruction that the trial judge gave to the jury was a correct statement of the law. That instruction included the following statements:

> In considering the discharge of the firearms into the door, you should consider the purpose or purposes which motivated those actions; the shooting of the door to force an entry into the house would constitute an attempt.
>
> The same shooting for a *different* purpose, as for example, to cause the reopening of the door without the intent to go inside, would not constitute an attempted burglary, although it would constitute a different crime and if there were several purposes in the minds of those who shot into the door, one of which purposes was to gain entry into the home that would be sufficient to constitute an attempt . . . . .

5. Appellants had previously gone to a bar looking for the rapist.

6. It might be noted that LaFave and Scott state that circumstances tending to show manslaughter "could hardly arise" in the felony murder situation. They reason:

> A loss of self-control may be the reasonable consequence of some provocations. But although the formation of an intent to kill or do serious bodily injury or to engage in highly dangerous conduct might be an understandable (though unreasonable) reaction, a decision to commit . . . [a] felony could hardly be so. [W. LaFave & A. Scott, Handbook on Criminal Law § 76, at 572 n.3 (1972)].

*v. United States,* 127 U.S.App.D.C. 180, 188, 382 F.2d 129, 137 (1967). There was nothing that Mr. Sissler did which would constitute adequate provocation.[7] Even if we also consider the fact that appellants were obviously upset at the rape of Spencer's mother, there is no basis for requiring that the jury be instructed on manslaughter. The defendants knew that Mr. Sissler was not the alleged rapist.[8]

■ Finally, appellant Spencer alleges that the statements of Mr. Sissler in the hospital were improperly admitted as dying declarations. The statements in question were made to a police officer approximately two hours after the shooting. It is evident from the record, however, that the trial court admitted these statements as spontaneous utterances rather than as dying declarations. This being so, "such utterance is admitted in the exercise of sound judicial discretion which is not disturbed on appeal unless clearly erroneous." *Nicholson v. United States,* D.C.App., 368 A.2d 561, 564 (1977). We conclude that the trial court did not err in finding that "during the time decedent was in the emergency room he was substantially and predominantly under the influence of the trauma which had been inflicted upon him, and that the declarations which he made at the time . . . do qualify as exceptions to the hearsay rule under spontaneous declarations."

Mr. Sissler's medical condition was critical when he talked to the officer. He was suffering from several gun shot wounds, at least one of which was in his chest and, when he was admitted to the hospital, his blood pressure was zero. There was testimony that he was in a great deal of pain, and that it was an effort for him to talk. These circumstances together with the fact that the declarations were made a relatively short time after the shooting indicate that his statement was spontaneous. There was little time or opportunity for Mr. Sissler to reflect upon what had happened to him and there was no apparent motive for him to lie. The circumstances of this case insure the reliability of the admitted statements.[9]

■ We note that there were verdicts of guilty returned in this case both as to felony murder and second-degree murder. Presumably, this occurred pursuant to the procedure outlined in *Fuller v. United States,* 132 U.S.App.D.C. 264, 407 F.2d 1199 (1968), *cert. denied,* 393 U.S. 1120, 89 S.Ct. 999, 22 L.Ed.2d 125 (1969). Since we are affirming the conviction on the felony murder charge the trial court should vacate the judgment of conviction for second-degree murder. *Fuller, supra* at 298 n.52, 407 F.2d at 1233 n.52. *See also United States v. Dancy,* 166 U.S.App.D.C. 399, 401 n.6, 510 F.2d 779, 781 n.6 (1975); *United States v. Belt,* 516 F.2d 873, 875 (8th Cir. 1975), *cert. denied,* 423 U.S. 1056, 96 S.Ct. 790, 46 L.Ed.2d 646 (1976).

*The judgments of conviction for felony murder, attempted first-degree burglary while armed, and conspiracy to commit an assault while armed are affirmed but the case is remanded to the trial court with instructions to vacate the judgment of conviction for second-degree murder.*[10]

---

7. Likewise, appellant Harris argues that perhaps the shooting "was done in retaliation at the door being shut in their faces." This is not the type of provocation which would reduce either degree of murder to manslaughter.

8. To illustrate, appellant Spencer's mother had been raped by a black man. Mr. Sissler was white. Spencer was aware of the fact that the rapist was black because earlier in the day he had stated that "he was going to pistol whip the Nigger." The only inference from the testimony adduced at trial was that appellant Harris must also have known that Mr. Sissler was not the rapist. There was testimony that when the group of persons were on the porch they asked Mr. Sissler "did the gardener live there"?

9. The finding of reliability is also supported by the fact that Mr. Sissler was "supplying raw data for analysis" rather than giving any conclusions or pointing a finger at any particular individual. *United States v. Kearney,* 136 U.S. App.D.C. 328, 333, 420 F.2d 170, 175 (1969).

10. We have reviewed the remaining arguments and find no prejudicial error.