Mary E. HARRIS, Appellant,

v.

UNITED STATES, Appellee.

No. 10610.

District of Columbia Court of Appeals.

Argued Feb. 16, 1977.

Decided Aug. 1, 1977.

Stephen G. Ryan, Washington, D. C., with whom Bruce D. Sokler, Washington, D. C., was on the brief, for appellant.

Sallie H. Helm, Asst. U. S. Atty., Washington, D. C., with whom Earl J. Silbert, U. S. Atty., John A. Terry and William D. Pease, Asst. U. S. Attys., Washington, D. C., were on the brief, for appellee.

Before NEWMAN, Chief Judge, and KELLY and HARRIS, Associate Judges.

NEWMAN, Chief Judge:

Appellant was tried by jury and convicted of conspiracy to commit an assault with a dangerous weapon, felony murder, and attempted first-degree burglary while armed. The same jury, in a separate proceeding after return of the verdict, found that these offenses were not the product of mental disease or defect. Appellant raises the following issues for review which merit our consideration: (1) whether the evidence was sufficient to support her conviction as an aider and abettor of an attempted first-degree burglary while armed; (2) whether the trial court committed reversible error in admitting certain hearsay statements; (3) whether the evidence was sufficient to support her conviction as an aider and abettor of felony murder; and (4) whether appellant was denied her Sixth Amendment right to trial by an impartial jury. We affirm.

The evidence reveals that in the early morning hours of July 13, 1974, appellant's daughter, Mrs. Brannon, while returning home from a neighborhood bar, was forced into a garage and raped by an unknown assailant. When she arrived home, she informed appellant of her assault and reported the incident to the police. Friends and relatives of Mrs. Brannon, learning of the attack, gathered in the appellant's home. During the course of their discussion, it was decided that Mrs. Brannon should return to the bar that evening, accompanied by her son and his companions who would find and deal forcibly with the rapist.

That evening, Mrs. Brannon tentatively identified two garages as resembling the site of the attack. Appellant later went to one of these garages which was located near the scene of the decedent's residence. Upon her arrival, she approached a young man who was working in the garden and accused him of raping her daughter. The young man summoned the owner of the house, Mr. Haines, who informed appellant that the youth could not have been the rapist.

At approximately 10:00 p.m., a group of about 15 persons met at appellant's house. Gaither Spencer, Mrs. Brannon's son, obtained a gun from appellant and announced that he was going to "pistol-whip" the assailant. Mrs. Brannon, Mr. Spencer, appellant and the others then drove to the bar. After a period of time spent there, resulting in violent altercations with another patron, the parties left and proceeded at appellant's direction, to the Haines residence. A number of persons remained in the yard and several persons, including appellant, went to the porch. When Louis Sisler, the son-in-law of Mr. Haines, answered the door, he was questioned as to the whereabouts of the rapist. Mr. Sisler replied to repeated inquiry that he did not know what they were talking about.[1] When he attempted unsuccessfully to close the door, he was shot several times with a pistol. After being taken to the hospital, Mr. Sisler conversed with his father-in-law and gave a statement to a police detective. He died a few hours thereafter.

Appellant contends that the evidence was inadequate to prove (1) that an attempt to forcibly enter the Haines house was made, and (2) that she was accountable as an aider and abettor. She, therefore, argues that her conviction for attempted first-degree burglary while armed must be reversed and accordingly the felony-murder conviction, predicated on the burglary, must also fall.

▪▪▪ Appellant's attempted first-degree burglary while armed conviction is alleged to have rested on inadmissible hearsay statements.[2] The first was the testimony of Detective Moore (who spoke with the decedent at the hospital), that Mr. Sisler had said one of the individuals involved had

---

1. Mr. Haines had not informed Mr. Sisler of the afternoon's events involving his contact with appellant.

2. The trial judge held a pretrial hearing on the admissibility of Mr. Sisler's statements to both Mr. Haines and Detective Moore and concluded that both could be admitted as excited utterances. Before Detective Moore's testimony was offered, the trial court reheard argument on the decedent's statement to the officer and again concluded that it was admissible.

produced a pistol and "started into the house" as he, Sisler, attempted to close the door. The admissibility of this statement was decided by this court in the companion case of *Harris v. United States,* D.C.App., 373 A.2d 590 (1977).[3] There it was held that the statement was properly introduced into evidence as a spontaneous utterance and that its admission under the circumstances of the case was not clearly erroneous. Nothing suggests a different result here as to this statement or that made to Mr. Haines under quite similar circumstances. Thus, we adhere to that ruling in this case.[4]

Appellant's argument that there was insufficient evidence upon which the jury could conclude guilt on the attempted first-degree burglary charge beyond a reasonably doubt is likewise unpersuasive. Viewed in the light most favorable to the government, as a challenge to the sufficiency of the evidence requires, *Curley v. United States,* 81 U.S.App.D.C. 389, 392, 160 F.2d 229, 232 (1947), the evidence shows that (1) the group was searching for a rapist who they believed was inside the Haines home; (2) one of the assailants produced a pistol and started into the house; (3) someone demanded a shotgun to shoot the door in; and (4) a shotgun was fired into the door. As this court pointed out in *Harris,* the decedent's statement to Detective Moore constituted direct evidence that the assailants attempted to enter the house. Moreover, the jury could also reasonably infer from a tear in the screen door[5] that a forcible attempt had been made to enter the house. We are convinced that the jury possessed sufficient competent evidence from which it could reasonably conclude beyond a reasonable doubt that someone attempted to enter the Haines home while armed with a dangerous weapon with intent to commit an assault therein.

 Appellant, who was not the actual perpetrator of the attempted burglary, was charged as an aider and abettor. D.C. Code 1973, § 22–105. Proof of presence coupled with conduct which designedly encourages the perpetrator, facilitates the unlawful deed, or stimulates others to render assistance to the criminal act is sufficient to prove criminal complicity. *Creek v. United States,* D.C.App., 324 A.2d 688, 689 (1974). The testimony offered by the government revealed that appellant "identified" the young man as the alleged rapist; gave the pistol to Gaither Spencer with knowledge of his intended use thereof; pointed out the Haines home as the rapist's residence; and went to the porch with the other participants. This evidence was sufficient to support the conviction of appellant of attempted first-degree burglary while armed.

Appellant next contends that the killing was not committed in the scope of the attempted burglary, but instead was an unintended and incidental side effect of the primary purpose to break into the house. Accordingly, she submits that her felony-murder conviction must be reversed.

 An aider and abettor of the underlying felony supporting the felony murder conviction "is legally responsible as a principal for all acts of the other person which are in furtherance of the common design or plan to commit the felony, or are the natural and probable consequences of acts done in the perpetration of the felony." *United States v. Heinlein,* 160 U.S.App.D.C. 157, 167, 490 F.2d 725, 735 (1973). Thus, to convict appellant, the jury was required to find that the homicide was committed with-

---

3. This case affirmed the convictions of Gaither Spencer and one Edward Harris for felony murder, attempted first-degree burglary while armed and conspiracy to commit an assault while armed in connection with the death of Mr. Sisler.

4. Certain testimony of Naurie Harris, an eyewitness to the events in question, is also claimed by appellant to be inadmissible. Mr. Harris testified that after several shots were fired he heard someone yell, "Bring the shotgun to blow the door off the hinges, shoot the door in." Even if this statement was hearsay, no objection was made to its admission. We conclude that its admission was not error affecting substantial rights which would warrant reversal. *Lloyd v. United States,* D.C.App., 333 A.2d 387, 390–91 (1975).

5. Mr. Haines testified that the screen had not been torn when he left the house that evening.

in the scope of the attempted burglary while armed, and not merely coincident thereto. *Id.* The evidence was fairly susceptible to the inference that the parties were bent on attacking a rapist thought to be within the dwelling and that the killing resulted when the decedent attempted to frustrate the effort by closing the door. Crediting this, the jury could have reasonably concluded that appellant was legally responsible since the homicidal act was in furtherance of the unlawful purpose and well within the scope of the attempted offense.

In the alternative, appellant argues that she withdrew from the criminal enterprise before the shooting occurred. However, to withdraw from a conspiracy one must take affirmative action to disavow or defeat the purpose, or definite, decisive and positive steps which indicate a full and complete disassociation. *Hyde v. United States,* 225 U.S. 347, 369, 32 S.Ct. 793, 56 L.Ed. 1114 (1911); *United States v. Chester,* 407 F.2d 53, 55 (3rd Cir.), *cert. denied,* 394 U.S. 1020, 89 S.Ct. 1642, 23 L.Ed.2d 45 (1969). While there was testimony indicating that appellant left the scene before the shooting occurred, it was in conflict with other evidence. Moreover, it was insufficient to establish withdrawal as a matter of law. Thus, it was a question for the jury which resolved it adverse to appellant.

Appellant further argues that because the burglary was based upon an intent to commit assault with a deadly weapon, the assault merged with the homicide and, therefore, could not support a felony-murder conviction. To hold otherwise, she submits, would permit the government to bootstrap a felony-murder conviction from an underlying assault, thereby exacting double punishment for a single act in violation of the merger doctrine.

After the briefs in the instant case were filed, this court decided *Blango v. United States,* D.C.App., 373 A.2d 885, (1977), which is dispositive of this issue. *Blango* held that application of the merger doctrine is unwarranted where a burglary based upon an assault serves as the predicate for felony murder. The rationale is two-fold: (1) D.C. Code 1973, § 22–2401 expressly provides that even a purposeless killing of another during any housebreaking while armed is first-degree murder and in no way excludes burglary based upon an intent to assault; and (2) the societal interest served by the burglary statute, protection of occupied dwellings, is separate and distinct from that of the murder statute, security and value of the person. Accordingly, we find no basis for application of the merger doctrine under these circumstances.[6]

The final issues raised by appellant concern alleged violations of her Sixth Amendment rights in connection with her insanity defense. The record reveals that after receiving a court-ordered psychiatric examination, appellant was committed to a mental hospital for observation and her case was severed from her codefendants. She was subsequently found competent to stand trial. Although a notice of intent to raise the insanity defense was filed, about two months later when trial had commenced, appellant's counsel announced that appellant refused to permit an insanity defense to be asserted. Counsel requested that the trial court assert it *sua sponte.* While the jury was deliberating the merits of the case, the court held a hearing on the request. At this hearing, in addition to counsel, a court appointed *amicus* participated. However, before oral argument on the matter, appellant withdrew her opposition to asserting an insanity defense. Two days later, the same jury heard the insanity defense and thereafter found appellant mentally responsible for her acts.

6. Even if *Blango* had been decided otherwise, appellant here would not benefit. It is clear from the evidence in this case that the anticipated victim of the assault was the alleged rapist, not Mr. Sisler, as appellant implies. The intended assault, therefore, could not have merged into the homicide because the latter was obviously a distinct, successive crime. *Cf. United States v. Diggs,* 173 U.S.App.D.C. 95, 522 F.2d 1310 (1975) (affirming conviction on two counts of armed robbery where the defendant robbed both a store and its employee.)

 Appellant now contends that her separate trial on the insanity issue was fatally tainted by the failure of the court to *sua sponte* impanel a new jury and argues that the failure to do so was an abuse of discretion. This argument is unconvincing because a defendant is not entitled to two juries as a matter of right, *Parman v. United States,* 130 U.S.App.D.C. 188, 191, 399 F.2d 559, 562, *cert. denied,* 393 U.S. 858, 89 S.Ct. 109, 21 L.Ed.2d 126 (1968); rather, he or she must proffer a "substantial claim" to justify a second jury. *Shanahan v. United States,* D.C.App., 354 A.2d 524, 527–28 (1976). Even then, the court has broad discretion in considering the impaneling of two juries. *Holmes v. United States,* 124 U.S.App.D.C. 152, 154, 363 F.2d 281, 283 (1966). Having made neither a request for two juries nor a meritorious claim for the necessity thereof, appellant cannot shift her obligation to the trial judge by now claiming the court abused its discretion in failing to impanel a new jury on its own motion.

 Likewise, we must reject the argument that appellant was denied her Sixth Amendment right to trial by impartial jury when the trial court failed to *voir dire* the panel, *sua sponte,* to screen out persons prejudiced against the insanity defense. While appellant concededly wavered on raising the issue, defense counsel was well aware of the possibility of the insanity defense (having filed a pretrial notice of intent to raise it) and could have taken advantage of the trial court's expressed willingness to permit counsel to ask questions of prospective jurors after conducting its own *voir dire.* The method and manner of conducting a *voir dire* are within the discretion of the trial court and ordinarily issues pertaining thereto will not be addressed on appeal unless specific objection was made at the time. *United States v. Bryant,* 153

U.S.App.D.C. 72, 76, 471 F.2d 1040, 1044 (1972), *cert. denied,* 409 U.S. 1112, 93 S.Ct. 923, 34 L.Ed.2d 693 (1973). The trial court was clearly under no duty, absent a request from defense counsel, to *voir dire* on the insanity issue. *Cf. United States v. Cockerham,* 155 U.S.App.D.C. 97, 476 F.2d 542 (1973) (rejecting contention that trial judge's refusal to ask on *voir dire* questions designed to ascertain attitudes toward insanity defense was an abuse of discretion.) Moreover, we have found, and appellant has cited, no authority suggesting an *obligation* on the part of the trial court, *sua sponte,* to conduct an interim *voir dire* before the second phase of a bifurcated trial. Finding little persuasive in this contention, we must reject it.

 Appellant's final complaint is that the court committed reversible error in the sanity hearing by permitting the prosecutor to appeal to prejudice in his closing argument.[7] Counsel for the government stated:

Now Mr. Sansing says it is the equitable thing to do, send her to St. Elizabeths, and Her Honor is going to instruct you, in 50 days Mrs. Harris comes up for evaluation. Now Dr. Palacio who is over there at St. Elizabeths, sits right on the stand and says, "I find nothing wrong with her now." What will he say in 50 days? That he found something wrong with her? Unlikely.

The record indicates that defense counsel, out of the presence of the jury, objected to the statement. The trial court informed counsel that a cautionary instruction would be given and accordingly advised the jury to disregard any statements of the prosecutor as to what action, if any, Dr. Palacio might take if appellant were committed to St. Elizabeths. The obvious implication of the prosecutor's remarks was that appellant

7. We find no error by the trial court in overruling objection to the following question propounded on cross-examination to a psychiatrist called by appellant: "Doctor, in the four cases in which you have testified, have you ever found any of them to be without mental disease or defect?" Bias or testimonial motivation is a proper subject of cross-examination and the trial court has discretion to control the extent of proof which may be undertaken to demonstrate it. *Tinker v. United States,* 135 U.S.App. D.C. 125, 127, 417 F.2d 542, 544, *cert. denied,* 396 U.S. 864, 90 S.Ct. 141, 24 L.Ed.2d 118 (1969); *Villaroman v. United States,* 87 U.S. App.D.C. 240, 241, 184 F.2d 261, 262 (1950).

would shortly be released if the jury did not reject her insanity defense. While clearly improper and indicative of an approach unworthy of government counsel, *see Berger v. United States,* 295 U.S. 78, 88, 55 S.Ct. 629, 79 L.Ed. 1314 (1935), the remarks could not be said to rise to the level of substantial prejudice mandating reversal, particularly where the effects of the error were mitigated by instruction. *Smith v. United States,* D.C.App., 315 A.2d 163, 166–67, *cert. denied sub nom. Jeffries v. United States,* 419 U.S. 896, 95 S.Ct. 174, 42 L.Ed.2d 139 (1974).

For the foregoing reasons, the conviction appealed from is affirmed.

*Affirmed.*