Lee P. BOONE, a/k/a Lee P. Walker, Appellant,

v.

UNITED STATES, Appellee.

No. 82–1584.

District of Columbia Court of Appeals.

Argued En Banc April 30, 1984.

Decided Oct. 2, 1984.

Vincent A. Jankoski, Washington, D.C., appointed by the court, for appellant.

Mary Ellen Abrecht, Asst. U.S. Atty., Washington, D.C., for appellee. Stanley S. Harris, U.S. Atty., Washington, D.C., at the time the briefs were filed, Michael W. Farrell, John R. Fisher, James F. Rutherford, and Amy S. Berman, Asst. U.S. Attys., Washington, D.C., were on briefs for appellee.

Before NEWMAN, Chief Judge, NEBEKER, MACK, FERREN, PRYOR, BELSON, and ROGERS, Associate Judges, and YEAGLEY and KERN,[*] Associate Judges, Retired.

MACK, Associate Judge:

On May 12, 1982, appellant was charged with assault with intent to kill while armed (D.C.Code §§ 22–501, –3202 (1981)), mayhem and malicious disfigurement while armed (D.C.Code §§ 22–506, –3202 (1981)), and possession of a prohibited weapon (D.C.Code § 22–3214(b) (1981)). The government dismissed the mayhem count on August 6, 1982. Appellant's jury trial began that same day. On August 9, 1982, the jury returned a verdict of not guilty on the charge of assault with intent to kill, and verdicts of guilty on the lesser-included offense of assault with a dangerous weapon (D.C.Code § 22–502 (1981)) and on the charge of possession of a prohibited weapon. Appellant was sentenced pursuant to the Federal Youth Corrections Act, 18 U.S.C. § 5010(c) (1976), to concurrent terms of up to ten years on each count.

Appellant raises three issues on appeal before this court, but in light of our disposition, we choose to address only one: whether the trial court's refusal to allow appellant to approach the bench, where prospective jurors were being examined on voir dire, violated appellant's right to be present at all stages of his trial.[1] We find that the trial court's ruling did deny appellant a right to be present at trial and that this error requires reversal of appellant's conviction.

The facts leading to appellant's conviction may be briefly summarized as follows. On October 27, 1981, at about 9:00 p.m., complainant met appellant and took him to an apartment in the 1500 block of S Street, Northwest. Complainant, then a fifty-six year-old man, and appellant, a seventeen-year-old man, had known one another since June of 1981. According to complainant, the two men ate dinner, had drinks, listened to stereo music and watched television before retiring. Complainant further testified that appellant arose at approximately 8:00 a.m. the next morning, began drinking and suddenly, without provocation or cause, attacked complainant with a razor blade and cut his throat. A struggle ensued, complainant attempted to flee, and appellant, voicing a threat, thereafter left the apartment. (Complainant was treated for his injuries at a local hospital.)

Appellant, testifying on his own behalf, narrated a substantially different account of the incident. According to appellant, he and complainant had engaged in sexual relations on the evening of October 27, 1981, as they had done on previous occasions. On the morning of the incident, complainant asked appellant to perform oral sodomy and when the latter refused and sought to leave, complainant blocked his egress. Complainant then forced appellant back to the bed. As complainant reclined on the bed, appellant, seated on the side thereof, saw a razor blade on a nearby table, cut complainant with it, and escaped.

Appellant contends that his right to be present during all stages of his trial, a right embodied in Super.Ct.Crim.R.

---

[*] Judge KERN was an Associate Judge of the court at the time of the en banc argument. His status changed to Associate Judge, Retired, on May 25, 1984.

[1]. We do not address the other two factually-oriented legal issues: whether the trial court's refusal to instruct the jury as to the claim of self-defense was erroneous or whether the trial court's instructions to the jury on the use of deadly force to prevent the commission of a forcible felony were improper.

43(a)(2),[2] was violated by the trial court's refusal to permit him to be present during that portion of the voir dire examinations of prospective jurors conducted at the bench. Prior to commencement of the voir dire, appellant, in reliance on this court's decision in *Robinson v. United States*, 448 A.2d 853 (D.C.1982), *reh'g en banc denied*, 456 A.2d 848 (D.C.1983), made a clear and timely request to be present at the bench conferences with any prospective jurors. The record indicates that the denial of that request appears to have been made in direct contravention of our decision in *Robinson* where we held that adherence to Super.Ct.Crim.R. 43(a) requires that a defendant, upon request, be allowed to be present at all stages of voir dire.[3] 448 A.2d at 855. Nevertheless, we will look closely at the instant case to determine if there are factual or legal considerations that might place it beyond the rationale or holding of *Robinson*.

Since our decision in *Robinson*, we have had two opportunities to elaborate upon the ramifications of a defendant's right to be present at the bench under such circumstances. In *Welch v. United States*, 466 A.2d 829, 838–39 (D.C.1983), we held that a defendant's failure to request to be present or to object to his exclusion therefrom constituted a waiver of his right to be present. And, more recently in *Brodis v. United States*, 468 A.2d 1335, 1336–37 (D.C.1983), we held that our ruling in *Robinson* is not to be given retroactive effect. Under the facts at bar, appellant's trial was commenced after *Robinson* was decided and a timely request to participate was voiced and then denied. Thus, on the surface, we are confronted with a case in a similar posture to that of *Robinson*.

In view of the trial court's expression of confusion, it is instructive to review the underpinnings and policies which precipitated our holding in *Robinson*. We stated in *Robinson* that upon request, Rule 43(a) requires a defendant to be permitted to participate at that portion of the voir dire conducted at the bench.[4] *Robinson, supra*, 448 A.2d at 855–56. Our holding stemmed from the recognition that this portion of the voir dire constituted a stage of the trial. *Id.* The overriding concern embraced by Rule 43 is that "after indictment ... nothing shall be done in the absence of the prisoner." *Lewis v. United States*, 146 U.S. 370, 372, 13 S.Ct. 136, 137, 36 L.Ed. 1011 (1892); *see Robinson, supra*, 448 A.2d at 855; *Washington, supra* note 4, 227 U.S.App.D.C. at 191–92, 705 F.2d at 496–97. To implement this stricture and to facilitate the defendant's participation in the jury selection process, we determined in *Robinson* that first hand observations of prospective jurors at the bench are to be permitted.

The importance of the defendant's presence at voir dire cannot be overemphasized. The defendant alone has peculiar knowledge about the facts of the alleged incident which brings him before his peers for judgment, about himself, and possibly about any participants or victims. No matter how extensive or involved were prior discussions with his lawyer, what may be irrelevant when heard or seen by his lawyer may tap a memory or association of the defendant's which in turn may be of use to

2. Rule 43 reads in pertinent part:
 (a) *PRESENCE REQUIRED.* The defendant shall be present at the arraignment, at the time of the plea, at every stage of the trial including the impaneling of the jury and the return of the verdict, and at the imposition of sentence, except as otherwise provided by this Rule.

3. In denying appellant's request to be present at the bench, the trial judge stated:
 [I]t's a very difficult situation for a judge, ... to confront a situation where his legal opinion is that a panel of the Court of Appeals has reached an erroneous conclusion.
 I have read the opinion, I have tried to understand its logic, I have looked at the citations, authorities cited by that panel for the conclusions that it reaches, and I can't understand how they reached the conclusion.

4. Recently, the District of Columbia Circuit Court of Appeals has also recognized this right. *United States v. Washington*, 227 U.S.App.D.C. 184, 191–92, 705 F.2d 489, 496–97 (1983).

his defense. As Justice Cardozo writing for the Court in *Snyder v. Massachusetts*, 291 U.S. 97, 106, 54 S.Ct. 330, 332, 78 L.Ed. 674 (1934) said, the "defense may be made easier if the accused is permitted to be present at the examination of jurors ... for it will be in his power, if present, to give advice or suggestion or even to supersede his lawyers altogether and conduct the trial himself." *See United States v. Alessandrello*, 637 F.2d 131, 151 (3d Cir.1980) (Higginbotham, J., dissenting), *cert. denied*, 451 U.S. 949, 101 S.Ct. 2031, 68 L.Ed.2d 334 (1981).[5]

Concomitant to the importance of defendant's presence at voir dire so that he may assist his lawyer, is the necessity that the defendant be present so that he may effectively exercise his peremptory challenges. Though the peremptory challenge has never been held to be constitutionally mandated by the Supreme Court, *Alessandrello*, *supra*, 637 F.2d at 151–52 (Higginbotham, J., dissenting), the Supreme Court has often noted its significance. *See, e.g., Swain v. Alabama*, 380 U.S. 202, 219, 85 S.Ct. 824, 835, 13 L.Ed.2d 759 (1965) ("a necessary part of a trial by jury"); *Frazier v. United States*, 335 U.S. 497, 506, 69 S.Ct. 201, 206, 93 L.Ed. 187 (1948) ("an opportunity beyond the minimum requirements of fair selection"); *Pointer v. United States*, 151 U.S. 396, 408, 14 S.Ct. 410, 414, 38 L.Ed. 208 (1894) ("one of the most important of the rights secured to the accused"). Indeed, the trial's impartiality is, in part, secured by the exercise of the peremptory challenge. *See Lewis, supra*, 146 U.S. at 378, 13 S.Ct. at 139. It is difficult to articulate what constitutes the basis prompting an exercise of a peremptory challenge. But, it is precisely the vagueness of an impression or intuitive feeling, or the desire "to express an arbitrary preference," *Frazier, supra*, 335 U.S. at 506, 69 S.Ct. at 206, which serves to illustrate the need for the defendant to be present when a prospective juror is being examined so that his impressions may be gained first hand. *See Robinson, supra*, 448 A.2d at 855; *Washington, supra*, 227 U.S.App.D.C. at 192, 705 F.2d at 497. Surely, just as it is difficult to articulate what induces the exercise of a peremptory challenge, it is improbable to expect a lawyer to be able to relate those impressions gained at the bench to his client. Each impression is, at bottom, a personal one. In this context, we point out that, as a general matter, the only vocal response given by many jurors is to inquiries to which they are directed to respond at the bench where the defendant is unable to hear and to observe their reactions.[6] The Supreme Court in *Lewis, supra*, quoting Blackstone stated:

> "As every one must be sensible, what sudden impressions and unaccountable prejudices we are apt to conceive upon the bare looks and gestures of another ... the law wills not that he should be tried by any one man against whom he has conceived a prejudice even without being able to assign a reason for such his dislike."

146 U.S. at 376, 13 S.Ct. at 138 (quoting 4 W. BLACKSTONE, COMMENTARIES 353). And yet an additional reason is noted by the Court, from Blackstone, to impress further the importance of the peremptory challenge:

> "Because, upon challenges for cause shown, if the reasons assigned prove insufficient to set aside the juror, perhaps

---

5. Judge Higginbotham, writing in dissent in *Alessandrello, supra*, also indicated that while the defendant's presence at the bench is critical to the attainment of an impartial jury and hence an impartial trial, it is also necessary "to the appearance of impartiality." 637 F.2d at 151. According to Blackstone, " 'how necessary it is that a prisoner (when put to defend his life) should have a good opinion of his jury, the want of which might totally disconcert him ....' " *Lewis v. United States, supra*, 146 U.S. at 376, 13

S.Ct. at 138 (quoting 4 W. BLACKSTONE, COMMENTARIES 353).

6. The most common such inquiry, known as the "*Ridley* question," asks whether the juror or a member of his immediate family has recently been a witness to, or a victim of, or arrested for a crime. *See United States v. Ridley*, 134 U.S. App.D.C. 79, 412 F.2d 1126 (1969).

the bare questioning his indifference may sometimes provoke a resentment; to prevent all ill consequences from which, the prisoner is still at liberty, if he pleases, peremptorily to set him aside."

*Id.* Undoubtedly, each defendant possesses unique sensibilities. In this case, we find pervasive logic for our position that the impressions of the defendant, characterized as "a male prostitute" by the government, may have differed from those of defense counsel.

In the interest of further instruction, we remind that our holding in *Robinson* implicitly recognized the constitutional underpinnings of Rule 43 in embracing the standard of review of *Chapman v. California,* 386 U.S. 18, 22, 87 S.Ct. 824, 827, 17 L.Ed.2d 705, *reh'g denied,* 386 U.S. 987, 87 S.Ct. 1283, 18 L.Ed.2d 241 (1967), for its violation. Subsequently, in *Welch, supra,* 466 A.2d at 838, we stated that Rule 43(a) "incorporates the protections afforded by the Sixth Amendment Confrontation Clause, the Fifth Amendment Due Process Clause, and the common law right of presence." *See Brodis, supra,* 468 A.2d at 1336; *Winestock v. United States,* 429 A.2d 519, 529 (D.C.1981); *Singletary v. United States,* 383 A.2d 1064, 1070 (D.C. 1978); *accord Washington, supra,* 227 U.S.App.D.C. at 191–92, 705 F.2d at 496–97; *Alessandrello, supra,* 637 F.2d at 137–38; *United States v. Brown,* 571 F.2d 980, 986–87 (6th Cir.1978). Furthermore, we note that the District of Columbia Circuit Court of Appeals has found that the defendant's right to be present "is an essential concomitant of a defendant's right to effective assistance of counsel." *Washington, supra,* 227 U.S.App.D.C. at 192, 705 F.2d at 497.

Two early cases from the Supreme Court provide instruction as to the meaning of the defendant's right to be present at trial. In *Hopt v. Utah,* 110 U.S. 574, 578, 4 S.Ct. 202, 204, 28 L.Ed. 262 (1884), the Court held, based upon a Utah statute, that it was error to exclude the defendant from the selection of jurors. Specifically, the Court stated, "[f]or every purpose, therefore, involved in the requirement that the defendant shall be personally present at the trial, where the indictment is for a felony, the trial commences at least from the time when the work of empanelling the jury begins." *Id.* The Court later in *Lewis, supra,* 146 U.S. at 375–76, 13 S.Ct. at 138, relying in part upon *Hopt,* held that it was error to require the defendant to exercise his rights of challenge where he "was not brought face to face with the jury until after the challenges had been made and the selected jurors were brought into the box to be sworn." 146 U.S. at 375–76, 13 S.Ct. at 138. *Lewis* is often quoted for its statement that "after indictment found, nothing shall be done in the absence of the prisoner." *Id.* at 372, 13 S.Ct. at 137. But, while some language in *Lewis* arguably implies that there exists a constitutional right to be present, *see id.* at 375–76, 13 S.Ct. at 138, other language indicates that the Court referred to the right "as it exists at common law." *Id.* at 377, 13 S.Ct. at 139. Any doubt that the Court had not tied the right of presence to a constitutional framework was removed in *Snyder, supra,* 291 U.S. at 117, 54 S.Ct. at 336, where the Court clarified that language in *Hopt* and *Lewis* on the right of presence was, respectively, dictum and discussion on the rule at common law. Although in *Snyder,* the Court held that a defendant has no constitutional right to be present at a view of the scene of an alleged crime, it did state that "the presence of a defendant is a condition of due process to the extent that a fair and just hearing would be thwarted by his absence, and to that extent only." *Id.* at 107–08, 54 S.Ct. at 333; *see Price v. Johnston,* 334 U.S. 266, 285, 68 S.Ct. 1049, 1060, 92 L.Ed. 1356 (1948). Subsequent cases, moreover, recognized that the confrontation clause of the sixth amendment gives the defendant "a right to be present at all stages of the proceedings where fundamental fairness might be thwarted by his absence." *Faretta v. California,* 422 U.S. 806, 816, 95 S.Ct. 2525, 2531, 45 L.Ed.2d 562 (1975) (citing *Snyder, supra; see also Illinois v. Allen,*

397 U.S. 337, 338, 90 S.Ct. 1057, 1058, 25 L.Ed.2d 353 (1970) (the confrontation clause guarantees the defendant the basic right to be present at every stage of the trial).[7] Furthermore, it has been argued that the "weight of modern authority supports a broad constitutional right of presence." *Proffitt v. Wainwright,* 685 F.2d 1227, 1256 & n. 41 (11th Cir.1982), *cert. denied,* ––– U.S. –––, 104 S.Ct. 508, 78 L.Ed.2d 697 (1983); *see, e.g., Robinson, supra,* 448 A.2d at 855–56; *Winestock, supra,* 429 A.2d at 529; *Washington, supra,* 227 U.S.App.D.C. at 191–92, 705 F.2d at 496–97; *Bustamante v. Eyman,* 456 F.2d 269, 272–74 (9th Cir.1972).[8]

Turning to our review of the instant case, there is no dispute that the trial court's ruling, denying appellant's request to be present at the bench during voir dire, constituted a violation of Rule 43 as it has been interpreted by this court. The only issue remaining is whether the government has met the burden of showing what this court has said it must meet, that the trial court's error was " 'harmless beyond a reasonable doubt.' " *Robinson, supra,* 448 A.2d at 856 (quoting *Winestock v. United States, supra,* 429 A.2d at 529); *accord Washington, supra,* 227 U.S.App.D.C. at 193, 705 F.2d at 498; *Alesandrello, supra,* 637 F.2d at 138 n. 11; *United States v. Crutcher,* 405 F.2d 239, 244 (2d Cir.1968), *cert. denied,* 394 U.S. 908, 89 S.Ct. 1018, 22 L.Ed.2d 219 (1969).

We conclude that the government has failed to show that the error was harmless.

As in *Robinson, supra,* the bulk of the voir dire was conducted at the bench. Approximately 23 prospective jurors approached the bench after responding affirmatively to questions posed by the trial judge. During these bench conferences, which comprise over 30 pages of the transcript, the court inquired further as to whether each prospective juror could render a fair and impartial verdict. Though defense counsel was permitted to consult with appellant at the close of the voir dire, appellant had had no opportunity to hear or to observe the majority of prospective jurors. The government's evidence, hinging as it did upon the credibility of the complaining witness, could hardly be characterized as strong. The sole defense of appellant was that of self-defense (a theory upon which the judge refused to instruct), and the success of that defense depended upon the jurors' acceptance of the credibility of a defendant who had admitted engaging in homosexual activities. Yet appellant was refused the right "to assist his counsel in the selection of the jurors," *Arnold v. United States, supra* note 8, 443 A.2d at 1327, and his ability to use effectively his peremptory challenges "to express an arbitrary preference," *Frazier v. United States, supra,* 335 U.S. at 506, 69 S.Ct. at 206, was severely limited.[9] In our view this refusal constituted reversible error.

We made an additional observation to address the concerns of the trial judge about the comfort of jurors and the disrup-

---

**7.** Arguably; however, to the extent the right of presence is derived from the sixth amendment right of confrontation, it may well be "limited to the stages of the trial when there are witnesses to be questioned." *Snyder v. Massachusetts, supra,* 291 U.S. at 107, 54 S.Ct. at 333; *see Alessandrello, supra,* 637 F.2d at 137 n. 8.

**8.** Several courts, nonetheless, have remarked that although Rule 43 has constitutional underpinnings, its scope is broader than the constitutional right it encompasses. *See Arnold v. United States,* 443 A.2d 1318, 1327 (D.C.1982); *Washington, supra,* 227 U.S.App.D.C. at 192–93 n. 5, 705 F.2d at 397–98 n. 5; *Alessandrello, supra,* 637 F.2d at 138; *Brown, supra,* 571 F.2d

at 986 & n. 5. Indeed, relying solely upon Rule 43 the Supreme Court held in *Rogers v. United States,* 422 U.S. 35, 39, 95 S.Ct. 2091, 2094, 45 L.Ed.2d 1 (1975) that a defendant has the right to be present when the trial judge responds to a communication from the jury. *See Alessandrello, supra,* 637 F.2d at 138 (Rule 43 provides unqualified right to be present at the jury impaneling); *Brown, supra,* 571 F.2d at 986 (Rule 43 guarantees right to be present at in-chambers conference concerning the dismissal of a juror). Thus, given the expansive statutory scope of Rule 43, it is difficult to define precisely its constitutional boundaries.

**9.** *See* p. 1138 *supra.*

tion of a customary practice.[10] It is true that for roughly the past ten years, the questioning of jurors on sensitive matters has been conducted at the bench outside of the defendant's immediate presence and hearing. The circuit court in *Washington, supra,* 227 U.S.App.D.C. at 191, 705 F.2d at 496, noted that this practice was traceable back to a suggestion made by the circuit court in *United States v. Ridley, supra,* note 6.[11] Ironically enough, however, that practice evolved not out of a concern for the well-being of prospective jurors, but rather in response to a perceived potential for fostering an atmosphere prejudicial to the defendant. *See id.* at 81, 412 F.2d at 1128. Still, we cannot be insensitive to, or unmindful of, the comfort or the security of persons who perform a public service in the administration of justice;[12] but neither can we ignore the principle that the presence of the defendant is essential to the legitimacy of our criminal justice system. *Cf. Lewis v. United States, supra,* 146 U.S. at 372, 13 S.Ct. at 137. The flexible approach reflected in our decision in *Robinson, supra,*[13] and followed in principle by the circuit court of appeals in *Washington, supra,* best accommodates these sometimes competing considerations.

We do not intend to convey the meaning that once a defendant's right to be present at voir dire is invoked, it can *only* be satisfied by his presence at the bench. The quintessential elements of the right require that the defendant have the ability to hear and to observe jurors' responses. Thus, we agree with the District of Columbia Circuit

10. The trial court stated:

> I have been involved in litigation in this jurisdiction since 1968.... [A]ll of that time, up until I became a judge, it was all criminal litigation.... [I]n every single case ... voir dire was conducted at the bench without the Defendant being present.
>
> There are some obvious practical difficulties with that situation. The first one is this. Jurors are, my experience teaches me, alarmed even at the thought that defendants in a criminal trial may be looking at a jury list that gives their identity. Jurors, as human beings, I believe would be at least uncomfortable in a situation where they are face to face with a person who is going to be on trial while they are revealing intimate things about themselves.

11. At the trial level in *Ridley,* jurors responded in open court to questions posed in voir dire as to whether any juror or member of his family had been a victim of a crime. While none of the twelve jurors ultimately chosen had responded affirmatively to those questions, appellant nonetheless argued that the jury panel had been "unduly exposed to a climate prejudicial to one accused of crime." *Ridley, supra,* 134 U.S. App.D.C. at 81, 412 F.2d at 1128. The circuit court did not address the allegation of prejudice since the issue was first raised on appeal. However, the court suggested that alternative methods might be considered which would not involve "delay or inconvenience disproportionate to the prejudice which may or may not reasonably be thought to inhere in the present system." *Id.* at 81, 412 F.2d at 1128. The circuit court later approved of the procedure whereby prospective jurors, who affirmatively respond to questions indicating that they have had prior contact with the criminal justice system, are examined at the bench outside of the hearing of other prospective jurors. *See United States v. Caldwell,* 178 U.S.App.D.C. 20, 32 & n. 42, 543 F.2d 1333, 1345 & n. 42 (1974), *cert. denied,* 423 U.S. 1087, 96 S.Ct. 877, 47 L.Ed.2d 97 (1976); *United States v. Bryant,* 153 U.S.App.D.C. 72, 76–77, 471 F.2d 1040, 1044–45 (1972), *cert. denied,* 409 U.S. 1112, 93 S.Ct. 923, 34 L.Ed.2d 693 (1973).

12. In *Press-Enterprise Co. v. Superior Court of California,* — U.S. ——, 104 S.Ct. 819, 78 L.Ed.2d 629 (1984) the Supreme Court stated that the presumption of openness attached to voir dire may be rebutted by a prospective juror's affirmative request for closure to protect legitimate privacy interests. *Id.* 104 S.Ct. at 825. *But see id.* 104 S.Ct. at 826 (Blackmun, J., concurring) (the case need not address or decide whether prospective jurors have such a right to privacy). In so stating, the Court suggested that an *in camera* proceeding on the record with counsel present might provide a proper recourse. *Id.* 104 S.Ct. at 825. We can attach no significance to the Court's failure to mention the defendant's presence at such a proceeding. The comment was obviously dictum in an opinion expounding first amendment principles in a context where defendant's trial counsel opposed (along with the prosecutor) the press' requested release of the transcript of the voir dire.

13. In *Robinson, supra,* we chose not to adopt a rule whereby violations of Rule 43(a) would automatically mandate reversal. Instead, we decided to examine each case on "an ad hoc basis." 448 A.2d at 855–56.

Court of Appeals' observation in *Washington, supra,* that the trial court might allow alternative procedures where, for example, there are multiple defendants or where security is a problem. 227 U.S.App. D.C. at 192 n. 4, 705 F.2d at 497 n. 4. In this context we suggest that alternatives such as "the use of closed circuit television and the opportunity to consult with counsel," *id.,* or holding portions of the voir dire either in chambers or in the jury room, or holding the entire voir dire in open court as was once the traditional practice, might satisfy the right to be present. Plainly, an accused has nothing to gain yet much to lose by intimidating a prospective juror during voir dire.

Finally we would remind that the openness of the process of jury selection is a matter of importance to the criminal justice system. The Supreme Court in *Press-Enterprise Co. v. Superior Court of California, supra* note 12, recently emphasized that *public* access to the jury selection process "enhances both the basic fairness of the criminal trial and the appearance of fairness so essential to the public confidence in the system." 104 S.Ct. at 823. Addressing the question of whether the voir dire is to be open to the public and press, Chief Justice Burger recognized the "presumptive openness of the jury selection process," based upon the practice of public selection of jurors traceable to the beginning of the sixteenth century. *Id.* Although the court conducted its inquiry into values under the first amendment, *id.* 104 S.Ct. at 824 n. 8; *see id.* 104 S.Ct. at 827–28 (Stevens, J., concurring), we find formidable logic in the deduction that if the public enjoys a presumptive right to attend the process of jury selection surely the defendant is entitled to the same access. For clearly, "[n]o right ranks higher than the right of the accused to a fair trial." *Id.* 104 S.Ct. at 823.

It is therefore ordered that the judgment of the trial court be reversed and the case remanded for a new trial.

*So ordered.*

FERREN, Associate Judge, with whom NEWMAN, Chief Judge, and MACK, PRYOR, and ROGERS, Associate Judges, join, concurring:

I join in Judge MACK's opinion for the court emphasizing peremptory challenges. I also join in Part II of Judge BELSON's opinion discussing challenges for cause. Because there is only one voir dire process for eliciting peremptory challenges and challenges for cause, a defendant's right to be present at voir dire for either purpose necessarily embraces the right to be present for the other.

BELSON, Associate Judge, concurring, with whom NEWMAN, Chief Judge, MACK, FERREN, PRYOR and ROGERS, Associate Judges, join in Part II:

I concur in the result reached by the majority, but do not join in the majority opinion because I think, respectfully, the grounds stated do not support the result. Essentially, the majority holds that appellant's exclusion from the portions of jury selection voir dire conducted at the bench deprived appellant of his right to participate in the exercise of peremptory challenges, and that this was so substantial a violation of his Super.Ct.Crim.R. 43 right of presence during trial that we must reverse.

**I**

It is the majority's reliance on a defendant's right to participate in exercising *peremptory* challenges that leads me to concur in the result only. There is no constitutional right to peremptory challenges. A trial procedure which omitted them entirely could certainly pass the constitutional due process test of fundamental fairness. *See United States v. Washington,* 227 U.S. App.D.C. 184, 192–93 n. 5, 705 F.2d 489, 497–98 n. 5 (1983). A regular trial court practice of excluding defendants from the peremptory challenge process would not provide the grounds for a successful constitutional attack.

I realize that the majority opinion has not relied upon a constitutional violation to reverse, but instead has relied upon its construction of Rule 43(a). The majority opinion says that Rule 43(a) has "constitutional underpinnings" (majority, *supra* at 1137), a statement that this court has made in previous cases. *Brodis v. United States,* 468 A.2d 1335, 1336 (D.C.1983); *Welch v. United States,* 466 A.2d 829, 838 (D.C.1983). I think that to decide this case we have to determine how much of a criminal defendant's right of presence is merely rule-created, and how much is constitutional underpinning. I take this view because I think this court has a certain flexibility in its interpretation of Rule 43(a), but that it does not have the power to construe Rule 43(a) in such a way as to invade the rule's constitutional underpinnings.

It is noteworthy that there is pending before this court a request by the judges of the Superior Court to modify Rule 43(a) to permit the Superior Court to continue to use the so-called *Ridley* [1] practice of having the defendant remain at counsel table while sensitive portions of jury selection voir dire are held at the bench.[2] If there is no constitutional requirement that defendant be able to see and hear each and every part of the voir dire, through presence at the bench or some other equally effective means, then this court is free to grant the Superior Court's request to amend Rule 43(a) in the fashion requested and is equally free to construe the present language of Rule 43(a) in a manner that takes into account the difficulties that trial judges may encounter in complying with a strict requirement of presence. *See generally Robinson v. United States,* 456 A.2d 848, 849–50 (D.C.1983) (Belson, J., statement upon denial of rehearing en banc).

## II

I think the practice that the trial judge followed in the instant case—in essence the practice proposed in the rule amendment—violates the Constitution. The majority opinion today does not take up the question whether defendant's presence at the bench is required so that he may effectively exercise his strikes for cause. I think that question is squarely presented by this appeal. It is, to me, apparent that matters can arise at voir dire bench conferences which may directly affect the defendant's exercise of challenges for cause. It is equally apparent that such matters will not always be of a purely legal nature and thus susceptible to handling by counsel without the assistance of defendant, but instead will frequently involve factual matters relating to jurors' qualifications concerning which the defendant will be better informed and therefore able to make a significant contribution. A juror being examined at the bench may give answers concerning persons, places, or events that would mean nothing to counsel, but would alert defendant to the existence of a ground for challenge for cause. As the majority opinion points out, Justice Cardozo wrote in *Snyder v. Massachusetts,* 291 U.S. 97, 106, 54 S.Ct. 330, 332, 78 L.Ed. 674 (1934), that "defense may be made easier if the accused is permitted to be present at the examination of jurors ..., for it will be in his power, if present, to give advice or suggestion or even to supersede his lawyers altogether and conduct the trial himself."

In challenges for cause, we are not dealing with mere matters of grace extended to defendants by the legislature and capable of being withdrawn by the legislature. We are dealing with the question whether a given juror is competent and qualified to serve in the trial of a particular case. Thus, the defendant's inability to participate implicates due process rights and deprives the proceeding of fundamental fairness. Both the United States Supreme Court and this court have held that limita-

---

1. *United States v. Ridley,* 134 U.S.App.D.C. 79, 412 F.2d 1126 (1969).

2. Statement Concerning Proposed Amendment to Rule 43(a) of the Superior Court Criminal Rules, 111 Wash.D.L.Rptr. 2027–28 (October 20, 1983).

tions on the defendant's freedom to inquire into veniremen's bias may violate the defendant's due process and Sixth Amendment rights to a fair trial by an impartial jury. *Ham v. South Carolina,* 409 U.S. 524, 93 S.Ct. 848, 35 L.Ed.2d 46 (1973) (unanimous holding that state trial judge violated the due process clause of the Fourteenth Amendment by disallowing voir dire questions on racial prejudice); *Harvin v. United States,* 297 A.2d 774 (D.C.1972) (trial judge who sharply restricted voir dire questioning on bias violated defendant's Sixth Amendment rights, a fundament of our legal system). *See also Rosales-Lopez v. United States,* 451 U.S. 182, 188, 101 S.Ct. 1629, 1634, 68 L.Ed.2d 22 (1981) (plurality opinion) (*"Voir dire* plays a critical function in assuring the criminal defendant that his Sixth Amendment right to an impartial jury will be honored."); *Irvin v. Dowd,* 366 U.S. 717, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1961) (in face of clear evidence that panel members were biased, trial court committed constitutional error in refusing to strike them for cause); *Khaalis v. United States,* 408 A.2d 313, 333–35 (D.C.1979), *cert. denied,* 444 U.S. 1092, 100 S.Ct. 1059, 62 L.Ed.2d 781 (1980) (where there had been extensive publicity, Sixth Amendment inquiry into juror bias turns on the adequacy of voir dire). Our system for striking venire members underscores the vital constitutional importance of strikes for cause: defendants are allowed an unlimited number of strikes for cause, while we grant them only a limited number of peremptory strikes. Super Ct.Crim.R. 24(b).

Counsel for the government conceded at oral argument in the instant case that defendants have a due process right to exercise strikes for cause. Excluding the defendant from voir dire questioning at the bench may have impaired his ability to exercise his strikes for cause and may therefore have deprived him of his fundamental constitutional rights. Under the circumstances, we cannot know whether appellant here suffered such deprivation. Therefore, I join the majority in reversing.

There remains for trial court judges the problem of developing procedures to meet the requirements laid down by this court in *Robinson v. United States,* 448 A.2d 853 (D.C.1982). No doubt the period of adjustment which has taken place since that opinion was rendered has produced valuable experience on how to minimize any inconvenience caused by the disapproval of the previous long-standing practice of handling sensitive voir dire at the bench while defendant remained at the counsel table. There is no alternative for the trial court other than to accommodate defendants who assert their right of presence while striving to conduct trials in the most efficient possible manner.

NEBEKER, Associate Judge, with whom KERN and YEAGLEY, Associate Judges, Retired, join, dissenting:

The trial court and the bar may have some difficulty in knowing whether we have adopted a new interpretation of Rule 43 or a constitutional holding that no rule can change. (It must be remembered that the Federal Rules of Criminal Procedure apply in the Superior Court and can only be modified with the approval of this court. *See* D.C.Code § 11–946 (1981). If we have constitutionalized our holding, have we precluded a federal rule amendment expressly rejecting our result in this case? It is to be hoped we have not.)

We have here a rare phenomenon—an "opinion for the court" referred to as "the majority opinion" by the author of the longer concurring opinion in which the majority (on the opinion for the court) concurs in part—the constitutional part expressly not relied upon in the opinion for the court. Like the unfortunate Frederic who was only five and a little bit over because he was born on February 29, we have here, in Sir William Gilbert's words in *Pirates of Penzance,* Act II, "A paradox? A paradox—A most ingenious paradox.... At common sense she gayly mocks."

To resolve the conundrum, however, one need only resort to the familiar principle

counseling avoidance of constitutional issues. *Massachusetts v. Westcott,* 431 U.S. 322, 97 S.Ct. 1755, 52 L.Ed.2d 349 (1977); *Hagans v. Lavine,* 415 U.S. 528, 543, 94 S.Ct. 1372, 1382, 39 L.Ed.2d 577 (1974). Since it is unnecessary to constitutionalize this holding and a non-constitutional avenue has been chosen in the opinion for the court (peremptory challenge), the constitutional discussion may and should be considered dicta.[1]

KERN, Associate Judge, Retired, dissenting, with whom NEBEKER, Associate Judge, and YEAGLEY, Associate Judge, Retired, concur:

The precise issue posed in the instant case is whether the experienced and conscientious trial judge committed reversible error in his conduct of the voir dire of the prospective jurors prior to the commencement of appellant's trial.

Preliminarily, I note the Supreme Court's recent reminder that "the [voir dire] process is to ensure a fair impartial jury, not a favorable one." *Press-Enterprise Co. v. Superior Court of California,* — U.S. —, 104 S.Ct. 819, 824, 78 L.Ed.2d 629 n. 9 (1984). I also note the general rule in this jurisdiction "that the method and manner of conducting voir dire are left to the discretion of the trial judge." *United States v. Bryant,* 153 U.S.App.D.C. 72, 76, 471 F.2d 1040, 1044 (1972), *cert. denied,* 409 U.S. 1112, 93 S.Ct. 923, 34 L.Ed.2d 693 (1973). In my view the able trial judge balanced the request by appellant "[t]o be present during voir dire at the bench," with

the need to assure the comfort and security of the jurors and correctly denied such request.[1]

The trial judge's comment in denying such request by appellant is instructive:

There are some obvious practical difficulties with that situation. The first one is this. Jurors are, my experience teaches me, alarmed even at the thought that defendants in criminal trials may be looking at a jury list that gives their identity. Jurors, as human beings, I believe would be at least very uncomfortable in a situation where they are face to face with a person who is going to be on trial while they are revealing intimate things about themselves. That's the only reason they would be at the bench.

If, as happened in my courtroom in a case that at the last moment did not go forward to trial, if there are a number of defendants—in that case there were four, three of whom were in custody, so that we have a situation where there were four defendants, three marshals, four defense attorneys and, in that case, two prosecutors. And with a request that we be with the defendants at the bench, it would have been impossible. And indeed, it would have been a security problem, additionally. But it would have been physically impossible to do it.

When reviewing the trial court's exercise of discretion in conducting voir dire in the instant case I am constrained to summarize the "intimate things" which the prospective jurors revealed on the record about their families and themselves to court and coun-

1. A particularly imaginative method of coping with this breath-to-breath ritual between some jurors and defendants has been devised and found tolerable by one trial judge. It seems that all jury trial courtrooms have been configured such that a clerk's station (desk and seat enclosure) are adjacent to the judge's bench on the side opposite the witness chair. This space is set off with a barrier wall of about thirty inches in height and the desk. It is adequate to accommodate in a standing position as many as three or four defendants with adequate security guards at hand. The defendants can see and

hear at this station what goes on at the bench conferences and yet a respectable separation is maintained. Perhaps this method can best solve the major problems created by the court's new interpretation of Super.Ct.Crim.R. 43.

1. Mr. Justice Blackmun has pointed out that trial judges, among other things, have "discretion to limit voir dire to protect juror safety." *Press-Enterprise Co. v. Superior Court of California,* — U.S. —, 104 S.Ct. 819, 826 n. 1, 78 L.Ed.2d 629 (1984) (Blackmun, J., concurring).

sel at the bench.[2] The revelations of the prospective jurors fell into two categories: in one category were the jurors who revealed that they or members of their family had been arrested and in some cases imprisoned; and, in the other category where those jurors who revealed that they or members of their family had been victims of crime.

Thus, jurors in the first category variously answered that a brother had "been arrested"; a son "was serving time" for larceny; a son was awaiting sentence for armed robbery; a brother had been arrested for stealing checks from his father; a husband had been arrested for disturbing the peace; a husband was serving a sentence for unauthorized use of a vehicle; a juror was himself awaiting trial on an unlawful auto possession charge; a daughter had been arrested for shoplifting; and, a "mentally disturbed" daughter had been charged with the death of another.

Jurors in the second category variously answered that a daughter had been raped at night by an unknown assailant with a knife; a brother had been robbed at gunpoint; a brother had been assaulted with a knife; a brother had been killed in an unstated crime; a brother had been killed by a sawed-off shotgun during a robbery; a

mother had been robbed; and, three jurors had themselves been victims of burglaries.

One majority of the court concludes that the trial court, despite the fact that it conducted the voir dire described above in conformity with the practice here for some 15 years,[3] violated Super.Ct.Crim.R. 43. I do not see how this can be. The Rule requires that a defendant *be present* at the time of the arraignment, the plea, the return of the verdict and the imposition of sentence, and "at every stage of the trial including impaneling the jury." The Rule rests upon the constitutional proposition that an accused must be permitted to be present *in the courtroom* in order to confront his accusers. 8B M. Waxner, M. Eisenstein, MOORE'S FEDERAL PRACTICE, ¶ 43.-02 (2d ed. 1984). It is undisputed in the instant case that appellant was "present" in the courtroom during the impaneling of the jury, thus satisfying not only the express terms of the Rule but also the oft-cited dictum by the Supreme Court that "after indictment ... nothing shall be done in the absence of the prisoner." *Lewis v. United States,* 146 U.S. 370, 372, 13 S.Ct. 136, 137, 36 L.Ed. 1011 (1892).

The majority does not disagree. Rather, it asserts, citing only to the controversial *Robinson* decision,[4] that the phrase in the Rule "at every stage of the trial" encom-

---

**2.** The court, after first introducing to the panel the attorneys and all the witnesses and asking if any of the prospective jurors knew the persons introduced, had then stated:

> I'd like to know whether you or any immediate member of your own family has, in the last ten years, been ... either the witness to a crime or arrested for a crime or the victim of a crime.... If you have a yes answer to any . part ... please stand up .... And would those of you who do have a yes answer please form a line in the center aisle.

Thereafter, the court and counsel questioned in turn at the bench each juror to determine if there was cause to remove her or him from the panel.

**3.** Thus, the experienced trial judge explained in denying the request of appellant's counsel for appellant to stand with the prospective jurors at the bench:

> I have been involved in litigation in this jurisdiction since 1968 ... and all of it was criminal litigation.... In all of that time, in

every single case that I was a participant or an observer in or of—it takes two different prepositions there—voir dire was conducted when at the bench without the defendant being present. Indeed, I do not know of any due process or constitutional right or necessity for a Defendant to be present at the bench during such proceedings.

**4.** *Robinson v. United States,* 448 A.2d 853 (D.C. 1982). This decision produced an evenly-divided court on whether to rehear en banc.

I note that the trial judge in declining the request of defense counsel commented:

> [I]t's a very difficult situation for a judge, especially a judge who believes in principles of stare decisis—and I certainly do—to confront a situation where his legal opinion is that a panel of a Court of Appeals has reached an erroneous conclusion.
>
> \* \* \* \* \* \*
>
> [W]hen the judge is in the dilemma that I am in ... it is appropriate to limit the case to its facts....

passes the bench conference which the court and counsel held here with each prospective juror to determine if such juror should be struck for cause. And the majority further asserts that the term "present" in the Rule means that the defendant must be within both eye and earshot of each prospective juror as she or he told intimate things to the judge and attorneys at the bench. But, as I read Rule 43, it expressly excludes from its coverage "conferences" between the court and counsel on "questions of law." 8B M. Waxner, M. Eisenstein, MOORE'S FEDERAL PRACTICE, ¶ 43.02[2] (2d ed. 1984). The purpose of the court's conference at the bench with counsel in the instant case was to determine the legal question of whether or not each prospective juror should be dismissed for cause. The following colloquy exemplifies the purpose of such bench conference.

THE COURT: Ms. Jackson?

A JUROR: That's right. I was a witness to seeing my cousin get killed by the police.

THE COURT: You saw your cousin get killed?

A JUROR: Three months ago. And a friend last month.

THE COURT: What were the circumstances that your cousin was killed?

A JUROR: My cousin was running from the police and got shot in the back of the head.

THE COURT: And you saw that happen?

A JUROR: Yes. And my friend—you have to excuse me. It was a traffic violation and him and the police got in a fight, and he knocked the police out.

Interestingly, the trial court's action here seems less drastic than that followed in *Arnold v. United States,* 358 A.2d 335 (D.C.1976) (en banc), where "the trial court defied established precedent" by refusing "to give the instruction on corroboration mandated by the case law," *id.* at 341, because the court could "see no reason under the sun in this day and age" to do so. *Id.* at 339.

5. The trial judge commented succinctly in assessing the reading of Rule 43 by the Division in *Robinson:*

The police came to, and all he did was pull his revolver and shot up at him and shot him three times in the chest. He died instantly.

THE COURT: Do you think given those experiences that you could sit on a case like this?

A JUROR: (Shakes head no.) No, sir.

THE COURT: I'll excuse you. You can go back to the juror's lounge.

The majority, apparently recognizing that its construction of Rule 43 is strained,[5] adopts as a further rationale for the result it seeks that appellant should have been at the bench during the voir dire proceedings described above "so that he may effectively exercise his preemptory challenges." Significantly, the majority explains that "it is improbable to expect a lawyer to be able to relate ... impressions gained at the bench to his client." Hence, says the majority, there is "the need for the defendant to be present where a prospective juror is being examined so that his impressions may be gained first hand."

But what a topsy-turvy result is reached by the majority! Those prospective jurors who have intimate things to reveal to the court and counsel, such as the fact that a daughter has been raped or a daughter who is mentally disturbed has been charged with another's death, are required to stand cheek by jowl with the defendant so that he may presumably hear the tremor in the juror's voice or see the tear in the juror's eye as each reveals these personal tragedies. According to the majority, these wrenching revelations are necessary so that the defendant himself can determine whether these prospective jurors

If one were to look at the logic of that opinion, I guess one would have to conclude that if that panel is right, then the Defendant would also have a right to be present at every bench conference during a trial, for I can glean no distinction between bench conferences at voir dire and bench conferences during the trial itself concerning what the court found as an extension of the Defendant's right to be present at the bench as a corollary of his right to be present at the trial.

should be peremptorily challenged later on in the proceedings. In contrast, all the other prospective jurors on the venire who have nothing of a sensitive nature to reveal about their families or themselves are kept away altogether from the defendant and he is therefore denied the advantage the majority purports to find in having him view the first group of prospective jurors at a kind of mini-lineup.

Put another way, the result of the majority's holding is to give to the defendant the chance to view the body language of the jurors he and his counsel know the most about anyway, *viz.*, that such jurors have been victims of crime or charged with crime, and give the defendant no opportunity to know anything at all about the jurors who have nothing of a sensitive nature to reveal.

The majority, apparently recognizing what a sensitive nerve it has touched, hastens to proclaim that it "cannot be insensitive to, or unmindful of, the comfort or the security of persons who perform a public service in the administration of justice." Accordingly, the majority suggests to the trial court "alternative procedures" to the "cheek by jowl" procedure it has earlier in its opinion mandated. Specifically, the majority's suggestions are: (1) the use of closed circuit television; (2) holding the "personal" portions of voir dire in the judge's chambers or the jury room where presumably the prospective jurors may be distanced somewhat from the defendant while they reveal "intimate things" about their families and themselves; and (3) "holding the entire voir dire in open court as was once the traditional practice...."

The shortcomings of these alternative procedures the majority suggests to the trial court are readily apparent: holding the entire voir dire in open court was abandoned 15 years ago, *see United States v. Ridley*, 134 U.S.App.D.C. 79, 412 F.2d 1126 (1969), because of the potential for prejudice to a defendant from having a number of jurors recite in the open courtroom a litany of crimes they had suffered. The use of closed circuit television, while having a superficial "Star Wars" appeal, is burdensome to the already-complicated and time-consuming criminal trial. Finally, while there may be some physical distancing if the process is held in the judge's chambers or a jury room, this does not still the uneasiness which the experienced trial judge in the instant case described:

> Jurors, as human beings ... would be at least uncomfortable in a situation where they are face to face with a person who is going on trial while they are revealing intimate things about themselves.

And equally important, this process would necessarily be held outside of the courtroom, and hence *not* be a *public* proceeding, thus raising a serious First Amendment question. *Press-Enterprise Co., supra.*

This majority of the court concludes that (1) there is *no* constitutional right for a defendant to be present at the bench during the personal portion of the voir dire and asserts that (2) it has chosen "not to adopt a rule whereby violations of Rule 43(a) would automatically mandate reversal." Instead, this majority has decided "to examine each case on 'an ad hoc basis.'"

Given these acknowledgements by this majority I would have thought that the trial court could make use of its own considerable experience and "otherwise" provide a procedure as it is specifically empowered to do under Rule 43. However, the other majority of the court has precluded the trial court from using its expertise and promulgating a rule to deal with the situation. This is because the other majority embraces the startling proposition that ever since *Ridley* courts of the District of Columbia have conducted voir dire without according the defendant "fundamental fairness." In this connection I note the Supreme Court's recent admonition:

> To preserve fairness and at the same time protect legitimate privacy, a trial judge must at all times maintain control of the process of jury selection and should inform the array of prospective jurors, once the general nature of sensi-

tive questions is made known to them, that those individuals believing public questioning will prove damaging because of embarrassment, may properly request an opportunity to present the problem to the judge *in camera* but with counsel present and on the record.

*Press-Enterprise Co. v. Superior Court of California, supra,* 104 S.Ct. at 825. I deem it significant that nowhere does the Court suggest that the defendant be present at such an *in camera* proceeding as long as it is held on the record with counsel present.

I fail to see why the other majority creates this conflict of constitutional magnitude between the prospective juror's right to privacy and the defendant's right to hear and see such juror reveal intimate things about himself or herself and his or her family. For some 15 years, courts here have followed the existing practice that the defense counsel is able to share with the defendant the crucial information about each prospective juror who goes to the bench, *viz.,* that the juror has been victimized by a crime or has committed a crime, as well as any other tactical matter. Indeed, I note the trial judge's comment to defense counsel in the instant case:

> It is my practice, and a practice that I will follow during *this voir dire,* to allow counsel to leave the bench and communicate with his client at anytime he wishes to do so to give him any information that you feel is relevant for him to have and for you to discuss with him. (Emphasis added.)

In the final analysis, I think this court must balance the minimal benefit to the defendant of viewing and hearing each prospective juror who goes to the bench to reveal "intimate things" about family and

self in order to enable counsel and court to determine if there is any cause to remove such juror from the panel against the prejudice to such jurors—citizens who are hauled into court under threat of civil contempt, and expect and are entitled, to some protection as they render service to their community. I would affirm the trial court, and reaffirm the practice followed in the District of Columbia courts since *Ridley,* providing a protection jurors expect and are entitled to.

I also would hope that the citizens of this community who are called to jury service will assert and pursue, aided by our public-spirited Bar, their legitimate expectation of privacy when they are confronted on voir dire with "sensitive questions," as was the case here.[6]

I respectfully dissent.

---

**6.** In this connection I note the concurring opinion by Mr. Justice Blackmun in *Press-Enterprise, supra* 104 S.Ct. at 826:
> Certainly, a juror has a valid interest in not being required to disclose to all the world highly personal or embarrassing information simply because he is called to do his public duty. We need not decide, however, whether a juror, called upon to answer questions posed to him in court during voir dire, has a

legitimate expectation, rising to the status of a privacy right, that he will not have to answer those questions.

I suggest that a juror's assertion of the right to answer highly personal questions during voir dire on the record but out of the hearing of all except the court and the attorneys is a right of privacy that should be vindicated in an appropriate proceeding.